**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Joseph L. YOUNG, Roger L. Young a/k/a Roy Young, and Kevin Fears, Defendants–Appellees.**

**No. 90SA201.**

Supreme Court of Colorado, En Banc.

July 9, 1991.

As Modified on Denial of Rehearing July 29, 1991.

---

Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Martin Egelhoff, Deputy Dist. Atty., Denver, for plaintiff-appellant.

Montaño and Encinas, P.C., Duane Montaño, Denver, Arthur S. Nieto, Denver, for defendant-appellee Joseph L. Young.

Holland, Seelen & Pagliuca, Jeffrey S. Pagliuca, Denver, Pozner, Hutt, Gilman & Kaplan, P.C., David S. Kaplan, Denver, for defendant-appellee Roger L. Young.

David F. Vela, Colo. State Public Defender, Terri L. Brake, Chief Deputy Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for defendant-appellee Kevin Fears.

Justice LOHR announced the Judgment of the Court and delivered an Opinion in which Justice KIRSHBAUM and Justice MULLARKEY joined.

This case presents a question concerning the facial constitutionality of the Colorado death penalty sentencing statute, § 16–11–103, 8A C.R.S. (1986 & 1990 Supp.), under article II, sections 20 and 25, of the Colorado Constitution. The Denver District Court held the statute invalid. We agree.

## I.

The defendants, Joseph L. Young, Roger L. Young, and Kevin Fears, are charged with first-degree murder [1] and other crimes in connection with the June 1989 deaths of two men, and the prosecution has stated that it intends to seek the death penalty. In May 1990 the district court, on the defendants' motions, ruled that the statute creating the procedure for deciding whether the death penalty should be imposed as a sanction for first-degree murder facially violates the Colorado Constitution.[2] The People appealed, relying on subsection 16–12–102(1), 8A C.R.S. (1986), as authority to obtain appellate review of the district court's interlocutory ruling.

## II.

At the outset we must determine whether we have jurisdiction over this case. We conclude that section 16–12–102(1) does not authorize this appeal but that we can and should exercise our original jurisdiction under C.A.R. 21 to review the district court's ruling invalidating Colorado's death penalty sentencing statute.

## A.

We turn first to the language of section 16–12–102, which provides authorization for appeals by the prosecution in certain circumstances. Well established principles will guide us in construing that legislation. In interpreting a statute, our primary task is to give effect to the legislature's intent, which is to be discerned when possible from the plain and ordinary meaning of the statutory language. *E.g., People v. Davis*, 794 P.2d 159, 180 (Colo.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991); *People v. District Court*, 713 P.2d 918, 921 (Colo.1986). Statutory provisions are not to be subjected to a strained or forced interpretation. *E.g., Anderson v. Kautzky*, 786 P.2d 1082, 1085 (Colo.1990); *Kern v. Gebhardt*, 746 P.2d 1340, 1344 (Colo.1987). Moreover, a statute must be construed as a whole so as to give consistent, harmonious, and sensible effect to all its parts. *E.g., People v. District Court*, 713 P.2d at 921; *Massey v. District Court*, 180 Colo. 359, 364, 506 P.2d 128, 130 (1973).

Subsection 16–12–102(1), 8A C.R.S. (1986), provides in relevant part:

The prosecution may appeal any decision of the trial court in a criminal case upon any question of law. If any act of the general assembly is adjudged inoperative or unconstitutional in any criminal case, it is the duty of the district attorney of the judicial district in which the court making such decision is situated to appeal on behalf of the people of the state of Colorado, unless the same issue of constitutionality is already pending before a reviewing court in another case. Nothing in this section shall authorize placing the defendant in jeopardy a second time for the same offense.... The procedure to be followed in filing and prosecuting appeals under this section shall be as provided by applicable rule of the supreme court of Colorado.

Although subsection 16–12–102(1) provides that "it is the duty of the district attorney" to appeal a trial court decision adjudging a Colorado statute unconstitutional in any criminal case, that subsection does not specify whether prosecutors are authorized to take *interlocutory* appeals of such decisions. In contrast, subsection 16–12–102(2), 8A C.R.S. (1990 Supp.), specifi-

---

1. § 18–3–102, 8B C.R.S. (1986 & 1990 Supp.).

2. The district court did not rule on the adequacy of the sentencing statute under federal constitutional standards.

cally provides for interlocutory appeal by the prosecution

> from a ruling of the trial court granting a motion made in advance of trial by the defendant for the return of property and to suppress evidence or granting a motion to suppress an extrajudicial confession or admission if the prosecution certifies to the judge who granted such motion and to the supreme court that the appeal is not taken for the purposes of delay and the evidence is a substantial part of the proof of the charge pending against the defendant. The prosecution may also file an interlocutory appeal in the supreme court from a ruling of the trial court granting a motion in limine pertaining to the matters described in this subsection (2).[3]

In construing section 16–12–102 as a whole, we presume that the legislature's specific authorization of prosecutorial interlocutory appeals in subsection 16–12–102(2) combined with its failure to provide such authorization for other interlocutory appeals under subsection 16–12–102(1) indicates its intention to confine interlocutory appeals to those specified under subsection 16–12–102(2). *See, e.g., Buder v. Sartore,* 774 P.2d 1383, 1387–88 (Colo.1989) (where statute specifies particular situations in which it is to apply, the statute is ordinarily to be construed as excluding from its operation all other situations not specified); *Meyer v. Charnes,* 705 P.2d 979, 982 (Colo. App.1985) (same). The concern expressed in subsection 16–12–102(2) by the requirement that the prosecution certify "that the appeal is not taken for the purposes of delay and the evidence [suppressed] is a substantial part of the proof of the charge pending against the defendant" also indicates legislative intent to limit interlocutory appeals.

In addition to setting out specific instances in which interlocutory appeal is authorized, section 16–12–102 allows for appeal "as provided by applicable rule of the supreme court of Colorado." We have

adopted C.A.R. 4.1 to govern interlocutory appeals from suppression orders and other orders covered by subsection 16–12–102(2). Other appeals are governed by C.A.R. 1, which provides in pertinent part that "[a]n appeal to the appellate court may be taken from: (1) *A final judgment* of any district, superior, probate, or juvenile court in all actions or special proceedings whether governed by these rules or by the statutes." C.A.R. 1(a)(1) (emphasis added). We have considered dismissal of a charge from a multi-count information to be a "final judgment" for purposes of appellate review under C.A.R. 1(a)(1). *People v. Jefferson,* 748 P.2d 1223, 1224 (Colo.1988). We deemed it important that dismissal of a charge "disposes of the opportunity to try that defendant on that particular charge at the same time other charges are pending before the trial court." *Id.* at 1225.

In *People v. Romero,* 801 P.2d 1192 (Colo.1990), we declined to extend our holding in *Jefferson.* In *Romero,* the defendant sought relief under Crim.P. 35(c) to vacate a judgment of conviction. *Id.* at 1193. The prosecution sought dismissal, asserting that the Crim.P. 35(c) motion was barred by subsection 16–5–402(3), 8A C.R.S. (1986), which limits collateral attacks on convictions. *Id.* The trial court ruled that subsection 16–5–402(3) was unconstitutional and ordered a hearing on the merits. *Id.* The prosecution appealed this interlocutory order. *Id.* We dismissed the appeal for lack of appellate jurisdiction, concluding that subsection 16–12–102(1) did not confer jurisdiction on this court to consider the prosecution's interlocutory appeal. *Id.* at 1195. We noted that unlike the dismissal in *Jefferson,* the trial court's ruling that the statutory limit on collateral attacks was unconstitutional would lead to a hearing on the merits. *Romero,* 801 P.2d at 1194. We stated that denying appellate review in *Romero* was

> consistent with the law and policy concerning interlocutory appeals by the

---

**3.** The People understandably do not argue that this interlocutory appeal is authorized under subsection 16–12–102(2), for subsection 16–12–102(2) specifically delineates the types of rulings from which an interlocutory appeal may be taken, and the interlocutory appeal of a ruling declaring the death penalty statute unconstitutional is not included among them.

prosecution in criminal cases. Because the prosecution in criminal cases generally is denied later appellate review, the prosecution is afforded more opportunity than is the defendant to appeal adverse interlocutory rulings.... This relatively greater ability of the prosecution to bring interlocutory appeals, however, is severely limited out of concern that the prosecution may "wear down" the defendant by taking an interlocutory appeal and because of the defendant's interest in the swift resolution of the case.

*Id.* at 1194–95 (citations omitted).

■ We are persuaded by the concerns raised in *Romero* that we should not extend our holding in *Jefferson*. We cannot consider a pre-trial ruling that the death penalty statute violates the Colorado Constitution a "final judgment" for the purposes of appeal under subsection 16–12–102(1). Our review of subsections (1) and (2) of section 16–12–102, taken as a whole and giving consistent, harmonious, and sensible effect to all the statutory language, also persuades us that an interlocutory appeal is not authorized under these circumstances. Accordingly, the prosecution's reliance on section 16–12–102(1) as the source of our jurisdiction to review the district court's interlocutory ruling is misplaced.

B.

■ Our jurisdictional inquiry does not end, however, with our conclusion that subsection 16–12–102(1) does not authorize this interlocutory appeal. An original proceeding under C.A.R. 21 can be utilized "to test whether the trial court is proceeding without or in excess of its jurisdiction, or to review a serious abuse of discretion when an appellate remedy would not be adequate." *People v. District Court of El Paso County,* 790 P.2d 332, 334–35 (Colo. 1990). We have exercised our original jurisdiction under C.A.R. 21 when a pretrial interlocutory ruling significantly interfered with a party's ability to litigate the merits of the case, *People v. District Court of Colorado's Seventeenth Judicial District,* 793 P.2d 163, 166 (Colo.1990), and when appeal would not provide a plain, speedy, and adequate remedy, *Weaver Construction Co. v. District Court,* 190 Colo. 227, 230, 545 P.2d 1042, 1044 (1976). The granting of relief under C.A.R. 21 is discretionary. *People v. District Court of Colorado's Seventeenth Judicial District,* 793 P.2d at 166; *Coquina Oil Corp. v. District Court of the Ninth Judicial District,* 623 P.2d 40, 41 (Colo.1981).

We recognized that appeal provided an inadequate remedy to the prosecution when we exercised our original jurisdiction to review trial court rulings declaring a former death penalty statute unconstitutional in *People v. District Court,* 196 Colo. 401, 586 P.2d 31 (1978). We stated that "[w]e have elected to address the issue in these cases because of the threshold question relating to the application of the death penalty in a number of pending cases in the Colorado courts." *Id.* at 403, 586 P.2d at 32. In addition, we have authority on our own motion to suspend the rules of appellate procedure in a particular case in the interest of expediting decision or for other good cause shown. C.A.R. 2; *Colorado Ass'n of Public Employees v. Department of Highways,* 809 P.2d 988, 990 n. 1 (Colo. 1991).[4]

The circumstances of this case lead us to conclude that we should exercise original jurisdiction. This case is the first request for appellate review of an issue of the constitutionality of the amended death penalty statute. Although we have considered certain constitutional issues in construing the statute's predecessor, we have recognized that the statute was amended substantially in 1988. *People v. Tenneson,* 788 P.2d 786, 789 n. 2, 797 n. 17 (Colo.1990). The district court's ruling that the death

4. Ordinarily, in a proceeding under C.A.R. 21 the district court would be named as a respondent. *See* C.A.R. 21(d). The defendants in the district court are the real parties interested in sustaining the district court's ruling, and ultimately we determine that the district court's ruling must be upheld. Under these circumstances, we do not consider it necessary to make the district court a formal party to this proceeding. We consider this procedure to be within our authority under C.A.R. 2.

penalty sentencing statute presently in effect is facially invalid under the Colorado Constitution addresses a legal issue that can be finally resolved only by a decision of this court. *See* § 13–4–102(1)(b), 6A C.R.S. (1987) (cases in which constitutionality of a statute is in question are excepted from jurisdiction of Colorado Court of Appeals). Pending such a decision, the trial court's ruling casts considerable doubt on the existence of an effective death penalty sentencing statute in Colorado. This situation necessarily creates confusion among prosecutors as to whether to seek the death penalty in particular cases and thereby invoke the complex and time-consuming procedures necessary to obtain a jury determination of the appropriateness of imposing a death sentence. *See* § 16–11–103, 8A C.R.S. (1986 & 1990 Supp.) (establishing procedures for determination of whether death penalty is to be imposed following determination of guilt in capital case). *See also People v. District Court*, 196 Colo. at 403, 586 P.2d at 32. It also subjects defendants to increased uncertainty concerning the validity of a death sentence, if imposed. If we decline to accept jurisdiction, the prosecution will be foreclosed from seeking the death penalty in this case even if the district court's ruling were to be later overturned on appeal. *See People v. Drake*, 748 P.2d 1237 (Colo.1988) (errors in sentencing proceedings resulting in imposition of death sentence require remand for imposition of life sentence); *People v. Durre*, 690 P.2d 165 (Colo.1984) (same). Under these circumstances, we conclude that it is proper for this court to exercise its original jurisdiction pursuant to C.A.R. 21.

### III.

The Colorado death penalty sentencing statute at issue here, section 16–11–103, 8A C.R.S. (1986 & 1990 Supp.), requires that a jury return a sentence of death for a person convicted of first-degree murder if it finds that at least one statutory aggravating factor has been proved beyond a reasonable doubt and that there are insufficient statutory mitigating factors or other mitigating circumstances to outweigh the statutory aggravating factors and any other aggravating circumstances. Section 16–11–103(2), 8A C.R.S. (1990 Supp.). Under this formulation, the statute requires that a jury sentence a defendant to death if the mitigators and aggravators are equally balanced. We hold that a sentence to death under those circumstances does not reflect the degree of certainty and reliability that the Colorado Constitution requires to support the imposition of the uniquely severe and irrevocable sentence of death. Accordingly, the statutory sentencing structure on its face violates the cruel and unusual punishments clause as well as the due process clause found, respectively, in article II, sections 20 and 25, of the Colorado Constitution.

### A.

Some background concerning Colorado's death penalty legislation and judicial decisions relating to such legislation will be helpful to place the questions raised in this case in proper focus. In *People v. District Court*, we struck down the Colorado death penalty statute then in effect because it did not allow the sentencing jury "to hear all the relevant facts relating to the character and record of the individual offender or the circumstances of the particular case," as required by *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). 196 Colo. at 405, 586 P.2d at 34. *Lockett* held that unless the sentencer is permitted to hear and consider such evidence before imposing sentence, a sentence to death does not satisfy the eighth and fourteenth amendments to the United States Constitution. These facts relating to "the character and record of the individual offender" have been referred to in Colorado's death sentence statutes as "mitigating factors" or "mitigating circumstances." *See People v. District Court*, 196 Colo. at 405–06, 586 P.2d at 34–35; § 16–11–103, 8A C.R.S. (1986 & 1990 Supp.).

The general assembly then adopted new legislation in an attempt to "remedy the deficiencies in the prior statute and satisfy federal constitutional standards." *Tenne-*

*son,* 788 P.2d at 790.[5] This new legislation, reflecting all amendments adopted through 1985, is found in section 16-11-103, 8A C.R.S. (1986) ("pre-1988 statute"), and is the predecessor to the statute at issue in this case. It provided a four-step process for determining whether a defendant found guilty of a capital offense should receive a sentence of death or life imprisonment. We addressed the validity of jury instructions given under that statute in *Tenneson,* in which we described the statutory jury deliberation process in the sentencing phase as follows:

> First, the jury must determine if at least one of the statutory aggravating factors exists. §§ 16-11-103(2)(a)(I), -(6). If the jury does not unanimously agree that the prosecution has proven the existence of at least one statutory aggravator beyond a reasonable doubt, the defendant must be sentenced to life imprisonment. §§ 16-11-103(1)(d), -(2)(b)(I), -(2)(c). Second, if the jury has found that at least one statutory aggravating factor has been proven, the jury must then consider whether any mitigating factors exist. §§ 16-11-103(2)(a)(II), -(5).... Third, the jury must determine whether "sufficient mitigating factors exist which outweigh any aggravating factor or factors found to exist." § 16-11-103(2)(a)(II). Fourth, and finally, if the jury finds that any mitigating factors do not outweigh the proven statutory aggravating factors, it must decide whether the defendant should be sentenced to death or to life imprisonment. § 16-11-103(2)(a)(III).

*Id.* at 789 (footnotes omitted).

In *Tenneson* we interpreted the pre-1988 statute "to require that in order to support the imposition of the death penalty, each juror must be convinced that the mitigating factors, if any, do not weigh more heavily in the balance than the proven statutory aggravating factors." *Id.* at 792. We further stated that "[a]n instruction to the jury that they must be convinced *beyond a reasonable doubt* that any mitigating factors do not outweigh the proven statutory aggravating factors before a sentence of death can be imposed adequately and appropriately communicates the degree of reliability that must inhere in the balancing process." *Id.* (emphasis added). As a final assurance of reliability, we held that the jury must be instructed that the fourth step of their deliberations should result in a death verdict "only if they unanimously agreed that death was the appropriate punishment beyond a reasonable doubt." *Tenneson,* 788 P.2d at 796.

In *People v. Davis,* 794 P.2d 159 (Colo. 1990), this court rejected the contention that the death penalty was unconstitutional *per se* under the Colorado Constitution. *Id.* at 170-172. The majority opinion upheld the constitutionality of the death penalty under the pre-1988 statute against a variety of challenges. *Id.* at 172-189. This court then affirmed the imposition of the death penalty under the facts of *Davis,* and later did the same in *People v. Rodriguez,* 794 P.2d 965 (Colo.1990). *See also People v. O'Neill,* 803 P.2d 164 (Colo.1990) (reversing imposition of death penalty under pre-1988 statute).

In 1988, and before our decisions in *Tenneson, Davis* and related cases, the legislature amended the death penalty sentencing statute in several respects. *See* Ch. 114, secs. 1-6, § 16-11-103, 1988 Colo.Sess. Laws 673, 673-75. The legislature specifically repealed former subsection 16-11-103(2)(a)(III), which had required the jury

---

**5.** We noted in *Tenneson* that to satisfy minimum federal standards, first, "[t]he statutory scheme 'must "genuinely narrow the class of persons eligible for the death penalty," ' " *Tenneson,* 788 P.2d at 790 (quoting *Lowenfield v. Phelps,* 484 U.S. 231, 244, 108 S.Ct. 546, 554, 98 L.Ed.2d 568 (1988), in turn quoting *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983)), and second, "a capital sentencing scheme must allow the sentencing body to consider any relevant mitigating evidence regarding the defendant's character and background and the circumstances of the offense," *Tenneson,* 788 P.2d at 790 (citing, *e.g., Boyde v. California,* 494 U.S. 370, ___, 110 S.Ct. 1190, 1195-96, 108 L.Ed.2d 316 (1990); *Penry v. Lynaugh,* 492 U.S. 302, 318, 109 S.Ct. 2934, 2946, 106 L.Ed.2d 256 (1989)). We recognized that the class may be narrowed by requiring a finding of aggravating circumstances. *Tenneson,* 788 P.2d at 790.

to return a verdict of death or life imprisonment based on the "considerations" of the aggravating factors that had been proved and the weighing of mitigating factors and aggravating factors previously accomplished. *Id.*, sec. 3. In *Tenneson* we held that subsection 16–11–103(2)(a)(III) required the jury as a fourth and final step, independent of the others, to decide whether the defendant should be sentenced to death or life imprisonment. *Tenneson*, 788 P.2d at 789, 796.

The statute now requires only a three step process. It provides in relevant part as follows:

(2)(a) After hearing all the evidence and arguments of the prosecuting attorney and the defendant, the jury shall deliberate and render a decision based upon the following considerations:

(I) Whether at least one statutory aggravating factor has been proved beyond a reasonable doubt as enumerated in subsection (6) of this section; and

(II) Whether sufficient statutory mitigating factors or other mitigating circumstances exist which outweigh any statutory aggravating factor or factors and other aggravating circumstances. For purposes of this weighing process, the finder of fact shall consider statutory aggravating and mitigating factors and any other aggravating or mitigating circumstances supported by the evidence.

. . . .

[ (2)(b) ](III) In the event that the jury finds that at least one statutory aggravating factor has been proved beyond a reasonable doubt, and that there are insufficient statutory mitigating factors or other mitigating circumstances to outweigh any statutory aggravating factor or factors that were proved and any other aggravating circumstances that were proved, the jury shall return a sentence of death.

§§ 16–11–103(2)(a)(I), (II), (2)(b)(III), 8A C.R.S. (1990 Supp.).[6] Under this new three step process the jurors must return a sentence of death if they find the aggravators and mitigators to weigh equally in the balance. That is the clear import of section 16–11–103(2)(b)(III), which requires a sentence of death if the mitigators are insufficient *to outweigh* the aggravators. We have been able to discover no legislative history shedding light on the purpose of the general assembly in eliminating the fourth step mandated by the pre–1988 statute—the requirement that the jurors determine whether the defendant should be sentenced to death or life imprisonment as the final step in their deliberations.

In the present case, the defendants moved to strike the death penalty from consideration, contending among other things that the elimination of the fourth step in the process for arriving at a death verdict results in a statute that facially

---

**6.** The 1988 amendments added "other aggravating circumstances" to the statutory list of "aggravating factors" in describing the matters to be taken into account in the balancing process. The pre–1988 statute limited the aggravating factors the jury was to take into account to those enumerated in subsection § 16–11–103(6) and required that those statutory aggravators be proved beyond a reasonable doubt. Under the amended statute, the finder of fact is to consider as well any "aggravating ... circumstances *supported by the evidence*" (emphasis added). §§ 16–11–103(2)(a)(II), 8A C.R.S. (1990 Supp.). The 1988 amendments also require that "[a]ll evidence ... that is relevant to and probative of the nature of the crime, and the character, background, and history of the defendant, ... and any matters relating to any of the aggravating or mitigating factors or circumstances shall be received." §§ 16–11–103(1)(b), 8A C.R.S. (1990 Supp.). The pre–1988 statute had provided that

"[a]ll *admissible* evidence ... that the court deems relevant to the nature of the crime, and the character, background, and history of the defendant, including ... any matters relating to any of the aggravating or mitigating factors enumerated in ... this section may be presented" (emphasis added). §§ 16–11–103(1)(b), 8A C.R.S. (1986).

In this case the trial court held that § 16–11–103 is unconstitutional because of the elimination of the fourth step required under the pre–1988 statute as construed in *Tenneson*. It did not discuss the other changes in the statute. Because the trial court based its holding on the elimination of the fourth step, the constitutionality of the other changes, including the aggravating factors and circumstances the jury must consider, the burden of proof required regarding aggravating circumstances, and the evidence admissible to prove aggravating factors and circumstances, is not before us in this case.

violates the cruel and unusual punishments clause in article II, section 20, and the due process clause in article II, section 25, of the Colorado Constitution. The district court agreed, relying on *Tenneson*, and grounding its ruling *solely* on the Colorado Constitution.[7] The question before us, therefore, is whether the elimination of step four deprives the statutory sentencing scheme of that degree of certainty and reliability essential to validity under the Colorado Constitution.

### B.

Article II, section 20, of the Colorado Constitution prohibits the infliction of "cruel and unusual punishments." Article II, section 25, of our state constitution provides that a person may not be deprived of life "without due process of law." It is these constitutional requirements against which we must measure the death penalty sentencing provision at issue here.

The eighth amendment to the United States Constitution also prohibits "cruel and unusual punishments," and the fourteenth amendment forbids any state to deprive any person of life "without due process of law." The existence of federal constitutional provisions essentially the same as those to be found in our state constitution does not abrogate our responsibility to engage in an independent analysis of state constitutional principles in resolving a state constitutional question. This responsibility springs from the inherently separate and independent functions of the states in a system of federalism. *See, e.g., Michigan v. Long*, 463 U.S. 1032, 1037–42, 103 S.Ct. 3469, 3474–77, 77 L.Ed.2d 1201 (1983); *Minnesota v. National Tea Co.*, 309 U.S. 551, 557, 60 S.Ct. 676, 679, 84 L.Ed. 920 (1940) ("It is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions."); *see also People ex rel. Juhan v. District Court*, 165 Colo. 253, 260–61, 439 P.2d 741, 745 (1968) (although a state may not deny a right guaranteed by the federal constitution, it may recognize additional rights in its own constitution).

■ We have recognized and exercised our independent role on a number of occasions and on several have determined that the Colorado Constitution provides more protection for our citizens than do similarly or identically worded provisions of the United States Constitution. *See, e.g., People v. Oates*, 698 P.2d 811 (Colo.1985) (rejecting the reasoning of *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), which construed the United States Constitution, and holding that warrantless installation of an electronic tracking device in a drum of chemicals prior to sale violated the purchaser's right to protection against unreasonable searches under the Colorado Constitution); *People v. Sporleder*, 666 P.2d 135 (Colo. 1983) (holding, in contrast to *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), construing the federal constitution, that warrantless installation of a pen register to record numbers dialed from defendant's home telephone constituted an unreasonable search under the Colorado Constitution); *Charnes v. DiGiacomo*, 200 Colo. 94, 612 P.2d 1117 (1980) (rejecting the rationale of *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), which construed the federal constitution, and holding that a bank customer has a reasonable expectation of privacy in bank records of the customer's financial transactions for purposes of state constitutional protections against unreasonable searches); *People v. Paulsen*, 198 Colo. 458, 601 P.2d 634 (1979) (rejecting the double jeopardy analysis in *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), in interpreting the state constitution to preclude a retrial of the defendant where the trial court erroneously entered post-jeopardy judgment of acquittal on grounds unrelated to factual guilt or innocence); *Juhan*, 165 Colo. 253, 439 P.2d 741 (rejecting due process analysis

---

7. The trial court held that the statute violates the Colorado Constitution. The court did not specifically refer to sections 20 and 25 of article II of the Colorado Constitution in its ruling.

The defense motions leading to that ruling, however, challenged the constitutionality of the death penalty statute on the basis of those provisions.

in *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), which held an Oregon statute requiring an accused to prove sanity beyond a reasonable doubt to be constitutional under federal standards, and concluding that a Colorado statute requiring an accused to prove sanity by a preponderance of evidence violated the due process clause of the Colorado Constitution). *Cf. Davis*, 794 P.2d at 170–72 (evaluating challenges to the death penalty statute under the Colorado Constitution by applying Colorado law and using United States Supreme Court cases only for guidance); *People v. Gutierrez*, 622 P.2d 547 (Colo.1981) (analyzing cruel and unusual punishments challenge to the habitual criminal act separately under state and federal constitutional standards and concluding the statute did not violate either constitution). This history reflects our repeated recognition that the Colorado Constitution, written to address the concerns of our own citizens and tailored to our unique regional location, is a source of protection for individual rights that is independent of and supplemental to the protections provided by the United States Constitution.

### C.

■ Although we are not bound by federal precedent in construing the provisions of the Colorado Constitution at issue in this case, we are persuaded by the reasoning of the United States Supreme Court cases that at a minimum the Colorado constitutional proscription of cruel and unusual punishments requires that any sentence to death be both certain and reliable. This requirement is based on the recognition that there is a qualitative difference between the penalty of death and all other penalties. *See, e.g., Mills v. Maryland*, 486 U.S. 367, 376, 108 S.Ct. 1860, 1866, 100 L.Ed.2d 384 (1988) ("In reviewing death sentences, the Court has demanded even greater certainty that the jury's conclusions rested on proper grounds."); *California v. Ramos*, 463 U.S. 992, 998–99, 103 S.Ct. 3446, 3451–52, 77 L.Ed.2d 1171 (1983) (qualitative difference of death from all other punishments "requires a correspond-

ingly greater degree of scrutiny of the capital sentencing determination"); *Lockett*, 438 U.S. at 604, 98 S.Ct. at 2964 (qualitative difference between death and other penalties "calls for a greater degree of reliability when the death sentence is imposed"); *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (plurality opinion) (same). Our own cases have recognized that death is a uniquely severe and irrevocable penalty, and that in consequence, certainty and reliability are essential in procedures for determining the appropriateness of that penalty and in jury verdicts imposing it. *People v. Rodriguez*, 794 P.2d 965, 972 (Colo.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 770, 112 L.Ed.2d 789 (1991); *Tenneson*, 788 P.2d at 792; *Drake*, 748 P.2d at 1254; *Durre*, 690 P.2d at 173.

Because the statute interpreted in *Tenneson* reflected legislative efforts to satisfy federal constitutional standards, we drew on United States Supreme Court reasoning when we concluded that due to "[t]he qualitatively unique and irretrievably final nature of the death penalty" there is an " 'enhanced need for certainty and reliability' in its application." *Tenneson*, 788 P.2d at 792 (quoting *Drake*, 748 P.2d at 1254). We held, therefore, that under the third step required by the pre–1988 statute the jury "must be convinced beyond a reasonable doubt that any mitigating factors do not outweigh the proven statutory aggravating factors before a sentence of death can be imposed." *Tenneson*, 788 P.2d at 792. We considered that under our sentencing scheme, "the beyond a reasonable doubt standard as applied to the weighing of aggravating and mitigating factors serves to assure the degree of reliability necessary to support a verdict of death in a sentencing proceeding." *Id.*, at 794.

We noted as well in *Tenneson* that the beyond a reasonable doubt standard as applied to step four of the jury's deliberations—the final determination of whether death is appropriate if mitigating factors do not outweigh aggravating factors— would be of particular importance if the jurors were convinced that statutory ag-

gravating factors and any mitigating factors were equally balanced. In such a circumstance, "it would be especially important that the jurors understand that the fourth step is separate and independent and requires that their ultimate conclusion that death is the appropriate penalty be reached only if they possess the degree of certainty that is communicated by the standard of beyond a reasonable doubt." *Tenneson*, 788 P.2d at 796. We were not required to decide, however, whether the fourth step was a constitutionally indispensable feature of the capital crime sentencing statute.

### D.

We have held that the weighing of aggravating and mitigating factors differs fundamentally from the functions of a jury in finding facts and applying the law as instructed by the court. *Tenneson*, 788 P.2d at 791, 793–94. Consideration of the nature of the process of weighing aggravating and mitigating factors exposes the lack of reliability of a sentencing procedure that requires a sentence of death when those factors are in equipoise, in absence of any further required step.

In *Tenneson*, we stated that " '[u]nlike the determination of guilt or innocence, which turns largely on an evaluation of objective facts, the question whether death is the appropriate sentence requires a profoundly moral evaluation of the defendant's character and crime.' " *Id.*, at 791 (quoting *Satterwhite v. Texas*, 486 U.S. 249, 261, 108 S.Ct. 1792, 1799, 100 L.Ed.2d 284 (1988) (Marshall, J., concurring in part and concurring in the judgment)). It is the consideration of aggravating factors and mitigating factors that guides the jury in

making that evaluation. A conclusion by the jury that the aggravating factors are of greater weight is simply an expression of the jurors' judgment that the moral evaluation that is the essence of the process of weighing aggravating and mitigating factors has caused each juror to conclude beyond a reasonable doubt that death is the appropriate sentence. *See Tenneson*, 788 P.2d at 792.

In order to return a sentence of death under section 16–11–103, 8A C.R.S. (1986 & 1990 Supp.), as under the pre–1988 statute, the jury must be satisfied beyond a reasonable doubt that the mitigating factors do not outweigh the aggravating factors. *Id.*, at 792. However, under the current statute, and unlike the pre–1988 statute, if the jurors are convinced that aggravating and mitigating factors are equally balanced, the jury is required to return a sentence of death, for in those circumstances there would be insufficient mitigating factors to *outweigh* the aggravating factors. *See* § 16–11–103(2)(b)(III), 8A C.R.S. (1990 Supp.). The fourth step required by the pre–1988 statute—a jury determination that death is the appropriate sentence beyond a reasonable doubt—is no longer part of the process. In the situation of equal balance between aggravating and mitigating factors, jurors engaged in the profoundly moral evaluation of the defendant's character and crime—expressed by the statute as a process of weighing aggravating and mitigating factors—will have concluded that the considerations suggesting that life imprisonment is the appropriate punishment weigh as heavily as those commending death. In other words, the jury would be unable to determine whether under statutory standards, death is the appropriate penalty.[8]

---

**8.** The fourth step, mandated by the pre–1988 statute, required that the jurors continue their deliberations after balancing aggravating and mitigating factors and specifically focus on whether the defendant should be sentenced to death or life imprisonment. § 16–11–103(2)(a)(III) (1986). Only if this further consideration of the defendant's character and crime resulted in a conclusion beyond a reasonable doubt that the defendant should be sentenced to death could such a sentence be

returned. *Tenneson*, 786 P.2d at 796. This we considered necessary "to communicate to the jurors the degree of confidence they must have in their ultimate conclusion before they can return a verdict of death." *Id.* This fourth step provided essential assurance, absent from the present sentencing scheme, that the requisite moral evaluation of the defendant's character and crime had been fully performed by each juror.

The result of a decision that the relevant considerations for and against imposition of the death penalty in a particular case are in equipoise is that the jury *cannot* determine with reliability and certainty that the death sentence is appropriate under the standards established by the legislature. A statute that requires a death penalty to be imposed in such circumstances without the necessity for further deliberations, as does section 16–11–103(2)(b)(III), is fundamentally at odds with the requirement that the procedure produce a certain and reliable conclusion that the death sentence should be imposed. That such a result is mandated by statute rather than arrived at by a jury adds nothing to the reliability of the death sentence. The legislature has committed the function of weighing aggravators and mitigators to the jury. A jury determination that such factors are in equipoise means nothing more or less than that the moral evaluation of the defendant's character and crime expressed as a process of weighing has yielded inconclusive results. A death sentence imposed in such circumstances violates requirements of certainty and reliability and is arbitrary and capricious in contravention of basic constitutional principles. Accordingly, we conclude that the statute contravenes the prohibition of cruel and unusual punishments under article II, section 20, of the Colorado Constitution, and deprives the defendant of due process of law under article II, section 25, of that constitution.

## IV.

The prosecution relies on three recent cases decided by the United States Supreme Court in urging that the feature of the death penalty sentencing statute at issue in this case satisfies constitutional standards. Although those cases cannot control our decision because the issue before us is one of Colorado constitutional law, we are attentive to the Supreme Court's reasoning, especially because the text of the cruel and unusual punishments clauses in the two constitutions are the same.

The United States Supreme Court has not addressed the constitutionality of a mandatory death penalty when the jury concludes that aggravating and mitigating factors are equally balanced. Two of the three recent cases relied on by the prosecution address mandatory imposition of a death sentence once the jury has reached the moral conclusion that aggravating factors prevail over mitigating factors in a particular case. *See Boyde,* 110 S.Ct. at 1196 (mandatory death sentence complies with eighth amendment proscription of cruel and unusual punishments if triggered by a finding that aggravating circumstances outweigh mitigating circumstances); *Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 1083, 108 L.Ed.2d 255 (1990) (mandatory death sentence is consistent with eighth amendment proscription of cruel and unusual punishments when sentence to death requires a jury finding of at least one aggravating circumstance and no mitigating circumstances or a jury finding that aggravating circumstances outweigh mitigating circumstances). In *Walton v. Arizona,* —— U.S. ——, 110 S.Ct. 3047, 3056, 111 L.Ed.2d 511 (1990) (plurality opinion), the United States Supreme Court held that a mandatory death sentence is consistent with the eighth amendment if triggered by a finding that at least one aggravating circumstance exists and that there are no mitigating circumstances sufficiently substantial to call for leniency.[9]

9. In Justice Blackmun's dissent, in which three other justices joined, he reads the Arizona statute and the cases decided under it to require the trial court to impose a death sentence "[i]f the mitigating and aggravating circumstances are in equipoise." *Walton,* 110 S.Ct. at 3075. He concludes that this "runs directly counter to the Eighth Amendment requirement that a capital sentence must rest upon a 'determination that death is the appropriate punishment in a specific case.'" *Id.* 110 S.Ct. at 3075 (quoting *Woodson v. North Carolina,* 428 U.S. at 305, 96 S.Ct. at 2991 (plurality opinion)). The plurality opinion in *Walton* does not discuss the possibility of an equal balance between aggravating and mitigating circumstances.

It is noteworthy that under Arizona's capital sentencing statutes, a judge rather than a jury performs the weighing of aggravating and mitigating circumstances, *Walton,* 110 S.Ct. at 3051, whereas a jury performs that function in Colorado unless a jury trial is waived. A more structured procedure to guarantee a reliable verdict may be necessary under jury sentencing.

■ Key to the United States Supreme Court rulings is the conclusion that a limitation on the class of persons eligible for the death penalty is constitutionally required and may be accomplished by a finding of at least one aggravating factor,[10] and that a weighing of all relevant mitigating factors is constitutionally required before a sentence of death can be imposed on a particular individual. *Walton,* 110 S.Ct. at 3056 (plurality opinion); *Boyde,* 110 S.Ct. at 1196; *Blystone,* 110 S.Ct. at 1083. The basis for these requirements "is the principle that punishment should be directly related to the personal culpability of the criminal defendant." *Penry,* 492 U.S. at 319, 109 S.Ct. at 2947. Thus, the Court in *Penry* stated

> that it is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing sentence. Only then can we be sure that the sentencer has treated the defendant as a "uniquely individual human bein[g]" and has made a reliable determination that death is the appropriate sentence.

*Penry,* 492 U.S. at 319, 109 S.Ct. at 2947 (quoting *Woodson,* 428 U.S. at 304, 96 S.Ct. at 2991) (citation omitted; brackets as in *Penry* ). Constitutional sufficiency is not assured simply because the jury is not limited in the mitigating factors it may hear and consider. The sentencer must also determine whether those mitigating factors are outweighed by the aggravating factors, *Boyde,* 110 S.Ct. at 1196; *Blystone,* 110 S.Ct. at 1083, or, stated alternatively, are sufficient to call for leniency, *Walton,* 110 S.Ct. at 3056. We find nothing in the reasoning in the United States Supreme Court cases cited that casts doubt on our conclusion that the Colorado death penalty statute fails to satisfy our own constitutional standards. We do not believe that the United States Supreme Court cases can be fairly read to contain any suggestion that the death penalty can be imposed when the sentencer finds aggravating and mitigating considerations to be equally balanced.[11] Even if we are wrong in our understanding of federal precedent, however, we hold that to authorize imposition of the death penalty when aggravators and mitigators weigh equally, as does the current version of section 16–11–103, violates fundamental requirements of certainty and reliability under the cruel and unusual punishments and due process clauses of the Colorado Constitution.

## V.

The Colorado death penalty statute as amended in 1988 mandates imposition of

See *Walton,* 110 S.Ct. at 3057; *Tenneson,* 788 P.2d at 792.

**10.** In *Gregg v. Georgia,* 428 U.S. 153, 159, 96 S.Ct. 2909, 2918, 49 L.Ed.2d 859 (1976), the United States Supreme Court stated that sentencing "discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Then, in *Lowenfield,* 484 U.S. at 244, 108 S.Ct. at 554 the Court noted that "[t]he use of 'aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion."

**11.** Although the issue is not before us because the trial court based its ruling only on the elimination of the fourth step required under the pre-1988 statute, we note that unlike the Colorado death penalty statute, the three United States Supreme Court cases relied upon by the prosecution dealt with schemes that limited the aggravating factors the jury was to consider by specifically enumerating the aggravating factors. *Walton,* 110 S.Ct. at 3051; *Boyde,* 110 S.Ct. at 1194 n. 1; *Blystone,* 110 S.Ct. at 1085 n. 1 (Brennan, J., dissenting). None dealt with schemes that permitted the jury to consider "other aggravating circumstances" in determining whether death was the appropriate penalty. In addition, none of these cases allowed aggravating factors or circumstances to be considered when they were merely "supported by the evidence" and where the evidence to be received by the court in determining the sentence did not have to meet admissibility requirements. *Walton,* 110 S.Ct. at 3052–53 (statute places burden on prosecution to prove aggravating factors and state supreme court has interpreted the burden of proof to be "beyond a reasonable doubt"); *Boyde,* 110 S.Ct. at 1194 n. 1 (challenged jury instruction limits factors to be considered by the jury to those supported by "evidence which has been received during any part of the trial of this case"); *Blystone,* 110 S.Ct. at 1085 (statute requires that prosecution "prove the existence of aggravating circumstances beyond a reasonable doubt") (Brennan, J. dissenting).

the death penalty when the jury decides that aggravating and mitigating factors are equally balanced. Because we conclude that such a statute does not assure a constitutionally certain and reliable verdict of death under the Colorado Constitution, we are persuaded that section 16–11–103 is invalid on its face. Exercising our original jurisdiction under C.A.R. 21, we discharge the rule.

QUINN, J., specially concurs.

ROVIRA, C.J., concurs in part and dissents in part, and ERICKSON and VOLLACK, JJ., join Rovira's, C.J., dissent only.

ERICKSON, J., dissents and VOLLACK, J., joins in the dissent.

Justice QUINN specially concurring:

I specially concur in the judgment. I fully agree with the constitutional principle espoused by the plurality that the "qualitatively unique and irretrievably final nature of the death penalty" mandates an enhanced level of certainty and reliability in the jury's decision to impose that penalty. Plurality op. at 843. The very reason for codifying into law a list of aggravating and mitigating factors or circumstances is to ensure certainty and reliability by requiring the sentencing jury, after giving due consideration to all relevant mitigating factors or circumstances supportive of a life sentence in making its determination, to resolve the issue of punishment on the basis of objective statutory criteria that narrow the class of persons eligible for a death sentence. The present statutory scheme, however, permits the jury to impose a death sentence when the jury is not satisfied beyond a reasonable doubt that any proven statutory aggravating factor, the existence of which is a statutory prerequisite to any consideration of a sentence of death, actually outweighs the mitigating evidence supportive of a life sentence. The certainty and reliability essential to a constitutionally valid death sentence lead me to conclude that this statutory scheme cannot be squared with the Cruel and Unusual Punishment Clause and the Due Process

Clause of the Colorado Constitution. Colo. Const. art. II, §§ 20 & 25.

I.

Effective July 1, 1988, the General Assembly amended the statutory capital sentencing scheme in several particulars. Ch. 114, sec. 5, 1988 Colo.Sess.Laws 673–75. The most critical aspect of the 1988 amendment is the elimination of the previously existing fourth step in the deliberative process, which provided that if the jury finds that any mitigating factors do not outweigh any proven aggravating factor or factors, it shall determine whether the defendant "should be sentenced to death or life imprisonment," § 16–11–103(2)(a)(III), 8A C.R.S. (1986). The 1988 statute collapses the previous third and fourth steps into one phase by providing as follows:

> In the event that the jury finds that at least one statutory aggravating factor has been proved beyond a reasonable doubt, and that there are insufficient statutory mitigating factors or other mitigating circumstances to outweigh any statutory aggravating factor or factors that were proved and any other aggravating circumstances that were proved, the jury shall return a sentence of death.

Section 16–11–103(2)(b)(III), 8A C.R.S. (1990 Supp.).

In *People v. Tenneson*, 788 P.2d 786 (Colo.1990), we considered the pre–1988 version of the statutory scheme applicable to the weighing of aggravating and mitigating factors. As expressed in section 16–11–103(2)(a)(II), 8A C.R.S. (1986), the weighing process required the jury to determine "[w]hether sufficient mitigating factors exist which outweigh any aggravating factor or factors found to exist." The present statute under consideration substantially tracks this pre–1988 version by requiring the jury to consider whether "sufficient statutory mitigating factors or other mitigating circumstances exist which outweigh any statutory aggravating factor or factors and other aggravating circumstances." Section 16–11–103(2)(a)(II), 8A C.R.S. (1990 Supp.). In *Tenneson*, we construed the statutory standard applicable to

the weighing process in the third step in the deliberative process to mean that each juror must be convinced beyond a reasonable doubt that "the mitigating factors, if any, do not weigh more heavily in the balance than the proven statutory aggravating factors." 788 P.2d at 792. We also held that the then existing statutory scheme required the jurors to separately determine in the fourth step of the deliberative process whether "they unanimously agreed that death was the appropriate punishment beyond a reasonable doubt." *Tenneson*, 788 P.2d at 796.

I dissented in part in *Tenneson* because I believed, as I continue to believe, that the *Tenneson* formulation of the "proof beyond a reasonable doubt" standard in terms of mitigation not outweighing aggravation does not go far enough in ensuring the certainty and reliability constitutionally essential for a valid sentence of death. 788 P.2d at 805–08 (Quinn, J., dissenting in part). I am satisfied that the constitutional prerequisites of certainty and reliability implicit in the Cruel and Unusual Punishment and Due Process Clauses of the Colorado Constitution mandate that the "proof beyond a reasonable doubt standard" applicable to the third step in the deliberative process be formulated in terms of the jury being convinced beyond a reasonable doubt that any proven statutory aggravating factors or circumstances actually outweigh the mitigating factors or circumstances before a valid sentence of death can be imposed. The necessity for such a procedure finds its source in the fact that the interest in life itself is of such transcendent importance that it requires a procedural regularity far beyond that applicable to the ordinary criminal proceeding. *See State v. Biegenwald*, 106 N.J. 13, 524 A.2d 130, 155–56 (1987).

The "mitigation not outweighing aggravation" standard sanctioned by section 16–11–103(2)(b)(III) results in requiring the imposition of a death sentence under circumstances where the evidence of aggravation is no more than evenly balanced with any mitigating evidence and also where the jury harbors a serious doubt about the appropriateness of a death sentence due to

the existence of substantial mitigating evidence calling for leniency but not such as to outweigh the evidence of aggravation. The present statutory scheme thus countenances, indeed requires, a verdict of death notwithstanding the existence of a level of jury uncertainty in the deliberative process that would prevent the same jury from conscientiously returning a guilty verdict in a trial involving a minor criminal offense. In my view, any death sentence imposed under the present statutory scheme would be substantially devoid of the certainty and reliability indispensable to a rational system of justice concerned with preventing the arbitrary and capricious imposition of capital punishment. I would hold, for reasons set forth in my partial dissent in *Tenneson*, 788 P.2d at 805–08, that the Cruel and Unusual Punishment and the Due Process Clauses of the Colorado Constitution require the prosecution to bear the burden of persuading the jury beyond a reasonable doubt that any proven statutory aggravating factor or circumstance outweighs any mitigating evidence before the jury can impose a sentence of death.

## II.

In the absence of requiring that the jury be convinced beyond a reasonable doubt that the aggravation outweighs mitigation, I agree with the plurality that the certainty and reliability essential to a constitutionally valid death sentence militate in favor of a fourth step in the deliberative process whereby the jury is required to separately and independently consider the appropriateness of the death sentence in the particular case under consideration. It has been observed, and quite cogently so, that nowhere in the law is the interplay of substantive statutory standards and procedural rules more critical than in the penalty phase of a capital case:

> The substantive standards must be "objective standards to guide, regularize, and make rationally reviewable the process for imposing a sentence of death." [*Woodson v. North Carolina*, 428 U.S. 280, 303, 96 S.Ct. 2978, 2990, 49 L.Ed.2d 944 (1976)]. It makes no difference,

however, how rational and discriminating the substantive standards are, if the procedural rules which implement those standards do not provide an effective mechanism for their faithful implementation. Even if Solomon-like wisdom were available in framing objective standards, their whole purpose could be thwarted if the governing procedural rules allowed the sentencing body to impose the death penalty in the face of evidence which creates a reasonable or substantial doubt as to the appropriateness of that penalty.

*State v. Wood,* 648 P.2d 71, 81 (Utah), *cert. denied, Wood v. Utah,* 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982).

The fourth step, while perhaps not adequate by itself to offset the uncertainty and unreliability fostered by the constitutionally infirm standard of proof applicable to the third step of the deliberative process, nonetheless offers some protection against the imposition of a death sentence when the jury is not convinced to a moral certainty that the evidence of aggravation actually outweighs the evidence of mitigation. The Cruel and Unusual Punishment and Due Process Clauses of the Colorado Constitution require the fourth step if for no other reason than to safeguard against the arbitrary and capricious imposition of a death sentence under a statutory scheme that countenances such a penalty even though the evidence of aggravation and mitigation is in a state of equipoise.

For the above reasons, I specially concur in the judgment invalidating section 16–11–103, 8A C.R.S. (1986 & 1990 Supp.).

Chief Justice ROVIRA concurring in part and dissenting in part:

Although I agree that this court may obtain jurisdiction over this case pursuant to C.A.R. 21, I disagree that the death-penalty statute, as amended in 1988, violates the Colorado Constitution's cruel-and-unusual-punishments and due-process clauses, art. II, §§ 20 and 25. Accordingly, I concur in part II of the plurality opinion, and dissent to the balance of it.

I

In 1984 the Colorado General Assembly amended subsection 16–11–103(2), 8A C.R.S. (1986), which the plurality refers to as the "pre–1988" statute, and provided for a sentencing scheme that required a capital-sentencing jury to follow "four steps" in arriving at a decision about imposing the death penalty. *See People v. Tenneson,* 788 P.2d 786, 789 (Colo.1990). The first step required the jury to determine whether the prosecution had proved, beyond a reasonable doubt, the existence of at least a single statutory aggravating factor. *See* §§ 16–11–103(2)(a)(I) and –103(6). The second step required the jury, if it found the existence of at least one aggravating factor, to determine whether any mitigating factors existed. *See* §§ 16–11–103(2)(a)(II) and –103(5). Next the jury was required to determine whether "sufficient mitigating factors exist which outweigh any aggravating factor or factors found to exist." Section 16–11–103(2)(a)(II). Finally, the jury was required to determine, based on its "considerations in [steps one through three], whether the defendant should be sentenced to death or life imprisonment." Section 16–11–103(2)(a)(III).

In 1988 the legislature amended section 16–11–103, in part by collapsing the sentencing process into three steps, eliminating step four. *Tenneson,* 788 P.2d at 789 nn. 2–3; *see* 1988 Colo.Sess.Laws 675 (codified at § 16–11–103(2), 8A C.R.S. (1990 Supp.)). Under the amended sentencing statute, "the jury shall return a sentence of death" if it finds that at least one statutory aggravating factor has been proven beyond a reasonable doubt, and that mitigating factors do not outweigh any proven statutory aggravating factors. Section 16–11–103(2)(b)(III).

II

The plurality concludes that, because the amended death-penalty statute requires jurors to impose the death penalty when jurors "are convinced that aggravating and mitigating factors are equally balanced," a death sentence imposed under the statute

violates the cruel-and-unusual-punishments and due-process clauses of the Colorado Constitution. Plur. op. at 844–845. I disagree that the possibility of equipoise in the jury's weighing of aggravating and mitigating factors renders the death-penalty statute violative of the state constitution.

### A

The keystone of the plurality's conclusion that the amended death-penalty statute violates the Colorado Constitution is its assertion that death sentences must be imposed with "certainty and reliability," and that death sentences imposed under the 1988 statute are neither "certain" nor "reliable" because the death sentence would be required in the event that jurors found the aggravating and mitigating factors to be equally balanced:

> The result of a decision that the relevant considerations for and against imposition of the death penalty in a particular case are in equipoise is that the jury *cannot* determine with reliability and certainty that the death sentence is appropriate under the standards established by the legislature. A statute that requires a death penalty to be imposed in such circumstances without the necessity for further deliberations, as does section 16–11–103(2)(b)(III), is fundamentally at odds with the requirement that the procedure produce a certain and reliable conclusion that the death sentence should be imposed.

Plur. op. at 844. In my view, the plurality improperly applies the requirement of "reliability" without reference to the death-penalty context from which that requirement arose. The result is an abstract and subjective evaluation of what constitutes "reliability."

As an initial matter, although the plurality refers to the "certainty and reliability" requirement in death-penalty sentencing, our cases illustrate that in fact "certainty" is only a component of the "reliability" required of the capital sentencing process prescribed by the death-penalty statute.[1] Moreover, as shown below, "reliability" is not a distinct end unto itself, but is rather a component of the fundamental constitutional principle that death sentences must not be imposed in an arbitrary and capricious manner. This court first used the phrase "certainty and reliability" in *People v. Drake*, 748 P.2d 1237, 1254 (Colo.1988), in explaining the holding of *People v. Durre*, 690 P.2d 165 (Colo.1984). A review of both cases, however, illustrates that "certainty" is merely a part of "reliability." In *Durre*, the court stated that, in general, because jury verdicts constitute the ultimate and critical aspect of the fact-finding process in criminal trials, the verdicts must be reliable, and "[t]o insure this reliability, we have required that a criminal jury express its decision in terms that are 'certain and devoid of ambiguity.'" 690 P.2d at 172 (quoting *Yeager v. People*, 170 Colo. 405, 410, 462 P.2d 487, 489 (1969)). In the context of capital sentencing, relying on federal death-penalty cases, we emphasized "the need for reliability in a capital sentencing hearing." 690 P.2d at 173. Further, although we began using the phrase "certainty and reliability" in *Drake*, *Drake*'s references to *Durre* and its reliance on United States Supreme Court capital cases, which do not use the phrase "certainty and reliability,"[2] demonstrate that *Drake*

---

1. "Certainty" is always required of the *sentence* imposing death in the sense that jurors must be unanimously convinced beyond a reasonable doubt that the penalty of death is the appropriate sentence. The requirement of "certainty," however, has only a nominal role in the determination whether a death-penalty *statute* is constitutional so long as the statute requires the jury to make its vital determinations beyond a reasonable doubt, which imparts the necessary high degree of certainty into the capital sentencing process, and that the jury make these determinations unanimously. Because the 1988

amended death-penalty statute, like the pre-1988 statute, continues to require the beyond-a-reasonable-doubt standard and unanimity in the crucial determinations, no issue arises over the statute's ability to effect a "certain" result.

2. In its death-penalty jurisprudence, the United States Supreme Court refers only to the requirement of "reliability" in death sentences, and makes no reference to the phrase "certainty and reliability." *See, e.g., Clemons v. Mississippi*, 494 U.S. 738, ——, 110 S.Ct. 1441, 1448, 108 L.Ed.2d 725 (1990); *Sawyer v. Smith*, 492 U.S. ——,

broke no new ground by coining the phrase; rather, it merely restated the constitutional principle that "[b]y virtue of the qualitative difference between death and any other permissible form of punishment, 'there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.'" *Durre,* 690 P.2d at 173 (quoting *Zant v. Stephens,* 462 U.S. 862, 885, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983)).[3]

In *Tenneson,* we set forth the analytical framework by which the constitutionality of death-penalty statutes should be judged. We identified two basic constitutional requirements that must undergird a death-penalty statute. "First, the discretion of the sentencer must be 'suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.'" *Id.* (quoting *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976) (plurality opinion)); *accord, e.g., Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 1083–84, 108 L.Ed.2d 255 (1990). "Second, in order to achieve constitutional validity, a capital sentencing scheme must allow the sentencing body to consider any relevant mitigating evidence regarding the defendant's character and background and the circumstances of the

offense." *Id.* (citing, *inter alia, Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 1195–96, 108 L.Ed.2d 316 (1990)); *accord, e.g., Mills v. Maryland,* 486 U.S. 367, 374–75, 108 S.Ct. 1860, 1865–66, 100 L.Ed.2d 384 (1988); *see Clemons v. Mississippi,* —— U.S. ——, 110 S.Ct. 1441, 1448, 108 L.Ed.2d 725 (1990) ("The primary concern in the Eighth Amendment context has been that the sentencing decision be based on the facts and circumstances of the defendant, his background, and his crime.").

In death-penalty jurisprudence, the "reliability" required in the capital sentencing process has never been an end in itself; rather it has always referred to some element of the discretion-limiting requirement or, more commonly, the mitigating-evidence requirement. For example, in *Penry v. Lynaugh,* 492 U.S. 302, 319, 328, 109 S.Ct. 2934, 2947, 2952, 106 L.Ed.2d 256 (1989), the United States Supreme Court stated:

> Underlying *Lockett [v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ] and *Eddings [v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) ] is the principle that punishment should be directly related to the personal culpability of the criminal defendant. If the sentencer is to make an individualized assessment of the appropriateness of the death penalty, "evidence about the defen-

---

——, 110 S.Ct. 2822, 2828, 2832, 111 L.Ed.2d 193 (1990); *Penry v. Lynaugh,* 492 U.S. 302, 319, 328, 109 S.Ct. 2934, 2947, 2951, 106 L.Ed.2d 256 (1989); *Murray v. Giarratano,* 492 U.S. 1, 8–9, 10, 109 S.Ct. 2765, 2769–70, 2770, 106 L.Ed.2d 1 (1989); *Johnson v. Mississippi,* 486 U.S. 578, 584, 108 S.Ct. 1981, 1985, 100 L.Ed.2d 575 (1988); *Sumner v. Shuman,* 483 U.S. 66, 72, 107 S.Ct. 2716, 2720, 97 L.Ed.2d 56 (1987); *Zant v. Stephens,* 462 U.S. 862, 884, 103 S.Ct. 2733, 2746, 77 L.Ed.2d 235 (1983); *Beck v. Alabama,* 447 U.S. 625, 638, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392 (1980); *Lockett v. Ohio,* 438 U.S. 586, 601, 604, 98 S.Ct. 2954, 2963, 2964, 57 L.Ed.2d 973 (1978); *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (plurality opinion). Although the Court in *Mills v. Maryland,* 486 U.S. 367, 376, 377, 108 S.Ct. 1860, 1866, 1867, 100 L.Ed.2d 384 (1988), stated that it "has demanded even greater certainty" in death-penalty cases and that it could not in *Mills* conclude "with any degree of certainty" that the jury did not construe the jury instructions in an unconstitutional manner, the Court did not intend to impose a new require-

ment in death-penalty cases. Rather, it intended to use the term synonymously with "reliability," since "reliability" is concerned with the constitutional requirement that a capital jury must be permitted to consider all mitigating evidence, *see infra* at 851–853, and the only issue in *Mills* concerned the opportunity for each of the capital-sentencing jurors in Maryland to consider all mitigating factors presented by the defendant even though the jurors might not be able to unanimously agree on which factors had been proven by the defendant, *see* 486 U.S. at 369–80, 108 S.Ct. at 1863–68.

**3.** Similarly, this court in *Tenneson* did not change the law requiring reliability when it stated, "Our own decisions also have recognized that 'the unique severity and irrevocability' of the death sentence creates an 'enhanced need for certainty and reliability' in its application." 788 P.2d at 792. Indeed, *Tenneson*'s review of applicable Supreme Court case law concerning the "heightened need for sentencing reliability in capital cases," *id.* at 791, cited the same cases as in *Durre. See id.*

dant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." Moreover, *Eddings* makes clear that it is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing sentence. Only then can we be sure that the sentencer has treated the defendant as a "uniquely individual human bein[g]" and has made a reliable determination that death is the appropriate sentence.

....

*In order to ensure "reliability in the determination that death is the appropriate punishment in a specific case," the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime.*

(Citations omitted; emphasis supplied.) In *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), the Court first articulated the reliability requirement. Concluding that there is a "need for reliability in the determination that death is the appropriate punishment in a specific case," *id.* at 305, 96 S.Ct. at 2991, the Court identified as a constitutional defect the North Carolina death-penalty statute's "failure to allow the particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death," *id.* at 303, 96 S.Ct. at 2990. In that context, the Court held:

While the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative, we believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circum-

stances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.

*Id.* at 304, 96 S.Ct. at 2991 (citation omitted). *See, e.g., Murray v. Giarratano,* 492 U.S. 1, 8–10, 109 S.Ct. 2765, 2769–71, 106 L.Ed.2d 1 (1989) (safeguards imposed by eighth amendment in trial stage of capital proceedings, as opposed to appellate stage, such as requirement that jury have option to convict of a lesser offense, and requirement that jury be permitted to consider all of capital defendant's mitigating character evidence, "are, we think, sufficient to assure the reliability of the process by which the death penalty is imposed," and thus there is no constitutional right to appointed counsel for capital defendants seeking to collaterally challenge their convictions and sentences); *Sumner v. Shuman,* 483 U.S. 66, 71–72, 107 S.Ct. 2716, 2719–20, 97 L.Ed.2d 56 (1987) (in previous cases reviewing validity of death-penalty statutes in five states, Court relied to a "significant degree on the unique nature of the death penalty and the heightened reliability demanded by the Eighth Amendment.... The principal opinions in these cases established that in capital cases, it is *constitutionally* required that the sentencing authority have information sufficient to enable it to consider the character and individual circumstances of the defendant prior to imposition of a death sentence.") (citations omitted; emphasis in *Sumner*); *Beck v. Alabama,* 447 U.S. 625, 638, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392 (1980) ("To insure that the death penalty is indeed imposed on the basis of 'reason rather than caprice or emotion,' we have invalidated procedural rules that tended to diminish the reliability of the sentencing determination.") (footnote omitted) (quoting *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (plurality opinion)).

Our death-penalty cases also illustrate that the requirement of reliability is subsumed within the two general constitutional requirements we identified in *Tenneson.* Although the three cases in which we have commented on the reliability requirement

are not directly on point because they concern the constitutional validity of jury instructions and not the validity of a death-penalty statute, their application of the reliability requirement was based on the rationale underlying the discretion-limiting or mitigating-evidence requirements articulated in *Tenneson* and United States Supreme Court cases. *See Tenneson*, 788 P.2d at 791–96; *Drake*, 748 P.2d at 1252–60; *Durre*, 690 P.2d at 172–75. In *Tenneson*, for example, in holding that capital jurors must be convinced beyond a reasonable doubt that mitigating factors do not outweigh proven aggravating factors before a death sentence may be imposed, we stated that the constitutional concern "for the reliability of a jury verdict of death finds expression in United States Supreme Court decisions requiring that a jury's determination to impose the penalty of death reflect the conviction of each juror, *guided by constitutionally sufficient statutory standards*." 788 P.2d at 792 (emphasis supplied).

The plurality's removal of the reliability requirement from the context of the constitutional standards by which death-penalty statutes are measured permits it to improperly substitute its own subjective notions of whether the amended death-penalty statute provides a "reliable" procedure for the imposition of the death sentence.

### B

Because the "reliability" of the capital sentencing process is included within the constitutional standards we identified in *Tenneson*, the issue before the court is whether the amended death-penalty statute "suitably direct[s] and limit[s] [the sentencer's discretion] so as to minimize the risk of wholly arbitrary and capricious action," *Tenneson*, 788 P.2d at 790, and whether the statute "allow[s] the sentencing body

to consider any relevant mitigating evidence regarding the defendant's character and background and the circumstances of the offense," *id.* I believe the statute satisfies both requirements.[4]

Subsection 16–11–103(2)(a)(I) requires that the capital jury find that "at least one statutory aggravating factor has been proved beyond a reasonable doubt"—this subsection thus " 'genuinely narrow[s] the class of persons eligible for the death penalty and ... reasonably justif[ies] the imposition of a more severe sentence on the defendant compared to others found guilty of murder.' " *Tenneson*, 788 P.2d at 790 (quoting *Lowenfield v. Phelps*, 484 U.S. 231, 244, 108 S.Ct. 546, 554, 98 L.Ed.2d 568 (1988) (quoting *Zant*, 462 U.S. at 877, 103 S.Ct. at 2742)). Subsection 16–11–103(2)(a)(II) requires that the capital jury consider "statutory or other mitigating circumstances" that are supported by the evidence, and thus the jury is permitted to "consider, 'as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death,' " *Blystone*, 110 S.Ct. at 1082 (quoting *Lockett*, 438 U.S. at 604, 98 S.Ct. at 2964 (plurality opinion)) (footnote and emphasis omitted).

Moreover, under subsection 16–11–103(2)(a)(II) the jury is required again to consider the mitigating factors at the weighing stage to determine whether they outweigh the aggravating factors. Only after the jury has determined beyond a reasonable doubt, *see Tenneson*, 788 P.2d at 792–93, that mitigating factors do not outweigh aggravating factors must the jury then sentence the defendant to death. This death-penalty sentencing scheme does not fall below constitutional standards requiring individualized sentencing: "The re-

---

**4.** The defendants have challenged the amended death-penalty statute's "mandatory" feature—which requires the imposition of the death penalty once the jury has determined that mitigating factors do not outweigh aggravating factors—and both parties have argued the issue in their briefs and in oral arguments. I construe the plurality's silence on this issue as a rejection of this challenge to the statute, based

on the United States Supreme Court cases rejecting the same challenge to similar "mandatory" death-penalty statutes. *See Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 1081–82, 108 L.Ed.2d 255 (1990); *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 1196, 108 L.Ed.2d 316 (1990); *Walton v. Arizona*, —— U.S. ——, 110 S.Ct. 3047, 3056, 111 L.Ed.2d 511 (1990).

quirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence." *Blystone,* 110 S.Ct. at 1083 (footnote omitted); *accord Boyde,* 110 S.Ct. at 1196; *Walton v. Arizona,* —— U.S. ——, 110 S.Ct. 3047, 3056, 111 L.Ed.2d 511 (1990) (plurality opinion).[5]

The amended death-penalty statute thus satisfies both the state and federal constitutions.[6]

## C

The addition into *Tenneson*'s analytical framework of the possibility of equipoise in the weighing process required by subsection 16–11–103(2) cannot reverse the conclusion that the amended death-penalty statute does not violate either the state or federal Constitution.

**5.** I consider part IV of the plurality opinion to be *dicta,* since the plurality opinion addresses only the constitutionality of the death-penalty statute that requires the imposition of death even if jurors find that aggravating and mitigating factors are equally balanced, *and since the* plurality acknowledges that it "do[es] not believe" the three United States Supreme Court decisions it reviews—*Blystone, Boyde,* and *Walton*—"can be fairly read to contain any suggestion that the death penalty can be imposed when the sentencer finds aggravating and mitigating considerations to be equally balanced," plur. op. at 846 (footnote omitted).

**6.** I find curious the plurality's sudden eagerness to seemingly abjure the United States Supreme Court death-penalty jurisprudence, while being "persuaded" by some elements of the jurisprudence, plur. op. at 843, and being "attentive" to other elements, plur. op. at 845.

While I have no difficulty with this court's striking out on its own in certain state constitutional matters, this seems a peculiar time for the court to reject the Supreme Court's guidance and to work from the comparatively blank slate on which our death-penalty jurisprudence is found. First, as the plurality acknowledges, the federal Constitution's cruel-and-unusual-punishments and due-process clauses are "essentially the same as those ... found in our state constitution." Plur. op. at 842. Second, as the plurality also acknowledges, the death-penalty statute that we considered in *Tenneson* and that has largely remained intact "reflected legislative efforts to satisfy *federal constitutional standards,*" plur. op. at 843 (emphasis supplied). In this context, it is worth noting that this court's sudden decision to forgo federal case law in this

Our role in reviewing the constitutionality of the death-penalty statute is necessarily limited. *See Gregg,* 428 U.S. at 174, 96 S.Ct. at 2925 (plurality opinion). In assessing the validity of a punishment selected by a democratically elected legislature, "[w]e may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved." *Id.* at 175, 96 S.Ct. at 2926 (plurality opinion); *accord People v. Davis,* 794 P.2d 159, 173 (Colo.1990) ("we may not strike down a particular penalty[ ] ' "because we deem less severe penalties adequate to serve the ends of penology" ' ") (quoting *Gregg,* 428 U.S. at 182–83, 96 S.Ct. at 2929–30 (plurality opinion) (quoting *Furman v. Georgia,* 408 U.S. 238, 451, 92 S.Ct. 2726, 2834, 33 L.Ed.2d 346 (1972) (Powell, J., dissenting))), *cert. denied,* ——

area of the law deprives our death-penalty jurisprudence of whatever predictability it has had, and makes that much more difficult the legislature's enactment of a death-penalty statute that must attempt to predict this court's view of the state and federal constitutions vis-a-vis death-penalty legislation. Third, although the plurality relies heavily on *Tenneson* to buttress its state constitutional analysis, we stated in *People v. Davis,* 794 P.2d 159, 170 (Colo.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991), that this court did not in *Tenneson* "directly address[ ] the question of capital punishment under the state constitution"; rather we "reviewed the [death-penalty] statute under the standards developed by the United States Supreme Court in *Gregg* and more recent cases." Finally, the plurality's decision to "engage in an independent analysis," plur. op. at 842, of the state constitution's cruel-and-unusual-punishments clause directly conflicts with this court's approach to that clause last term, when we adopted the United States Supreme Court's reasoning in *Gregg* and rejected the capital defendant's *per se* challenge, based on the cruel-and-unusual-punishments clause, to the death-penalty statute:

> Implicit in the *Tenneson* decision is the assumption that there exists no independent basis under the state constitutional provision forbidding cruel and unusual punishment on which to base a *per se* challenge to capital punishment.
>
> Further, in other contexts we have not adopted an analysis of our constitutional provision forbidding cruel and unusual punishment which differs from that followed by the United States Supreme Court with respect to the Eighth Amendment.

*Davis,* 794 P.2d at 170.

U.S. ——, 111 S.Ct. 662, 112 L.Ed.2d 656 (1991). Moreover, "[s]tates are free to structure and shape consideration of mitigating evidence 'in an effort to achieve a more rational and equitable administration of the death penalty.'" *Boyde*, 110 S.Ct. at 1196 (quoting *Franklin v. Lynaugh*, 487 U.S. 164, 181, 108 S.Ct. 2320, 2331, 101 L.Ed.2d 155 (1988) (plurality opinion)); *accord Blystone*, 110 S.Ct. at 1084.

The plurality's assertion that the state and federal constitutions forbid the imposition of the death penalty when aggravating and mitigating factors are equally balanced presupposes that the jury must always make the final determination that death is the appropriate sentence for a particular defendant. "But there is no such constitutional requirement of unfettered sentencing discretion in the jury." *Boyde*, 110 S.Ct. at 1196. Our state constitution does not, any more than the federal Constitution, forbid the legislature from enacting a death-penalty statute requiring the imposition of death upon a jury's finding that mitigating factors do not outweigh aggravating factors, and the plurality opinion is devoid of any reasoning based on the state constitution that would suggest otherwise. As demonstrated above, the amended death-penalty statute " 'genuinely narrow[s] the class of persons eligible for the death penalty[,] reasonably justif[ies] the imposition of a more severe sentence on the defendant compared to others found guilty of murder,' " and permits the sentencing body to consider all relevant mitigating evidence regarding the defendant's character, background and circumstances of the offense. *Tenneson*, 788 P.2d at 790. These characteristics of the amended death-penalty statute adequately ensure the preservation of a capital defendant's rights under the cruel-and-unusual-punishments and due-process clauses of the state constitution.

Under Colorado's death-penalty statute, the legislature, as the representative of the citizens of Colorado, has determined that it does not wish to repose in the capital sentencer's discretion the decision whether to impose the death sentence after the capital sentencer has found that mitigating factors do not outweigh aggravating factors. We cannot take lightly the legislature's decision, because we must "respect ... the ability of [the] legislature to evaluate ... the moral consensus concerning the death penalty and its social utility as a sanction," *Gregg*, 428 U.S. at 186–87, 96 S.Ct. at 2931–32 (plurality opinion), and to require the imposition of the death penalty.

D

I take issue with the plurality's characterization of *Tenneson* as having some bearing on the constitutional necessity of the pre–1988 death-penalty statute's fourth step, *see* § 16–11–103(2)(a)(III), which was eliminated by the 1988 amendments to the statute. Relying on *Tenneson*, the plurality concludes that the fourth step "provided essential assurance, absent from the present sentencing scheme, that the requisite moral evaluation of the defendant's character and crime had been fully performed by each juror." Plur. op. at 844 n. 8. I believe the plurality misconstrues the *Tenneson* opinion.

No issue was presented in *Tenneson* regarding whether the fourth step was a constitutionally necessary part of the death-penalty statute. The issue in *Tenneson* and the companion case, *People v. Vialpando*, 788 P.2d 786 (Colo.1990), was, in relevant part, whether the trial court erred in instructing the jury that in order to sentence the defendants to death the jurors "must find ... that death is the appropriate penalty beyond a reasonable doubt," 788 P.2d at 788–89. This issue implicated step four, which permitted the jury to decide, based on the considerations in steps one through three, "whether the defendant should be sentenced to death or life imprisonment," § 16–11–103(2)(a)(III).

In explaining that the beyond-a-reasonable-doubt standard was "an implicit part" of the jury's determination in step four that death was the appropriate penalty, this court stated:

We are reinforced in our conclusion by the fact that under Colorado's statutory scheme the jury would proceed to the

fourth step in the unlikely event that the jury were convinced beyond a reasonable doubt that any mitigating factors and the proven statutory aggravating factors were exactly in balance. In those circumstances, it would be especially important that the jurors would understand that the fourth step is separate and independent and requires that their ultimate conclusion that death is the appropriate penalty be reached only if they possess the degree of certainty that is communicated by the standard of beyond a reasonable doubt.

788 P.2d at 796 (footnote omitted). Thus, *Tenneson* merely holds that jurors deliberating during the fourth step of the capital sentencing proceedings must be convinced beyond a reasonable doubt that the defendant should be sentenced to death. Yet, the plurality somehow finds in this holding support for its conclusion that the fourth step "provided essential assurance ... that the requisite moral evaluation of the defendant's character and crime had been fully performed by each juror."

I find unconvincing the plurality's assertion that the fourth step is necessary to ensure that jurors conduct a moral evaluation of the defendant's character and crime.[7] Subsection 16-11-103(2)(a) (1990 Supp.) provides that the jury may only impose punishment on a defendant "[a]fter hearing all the evidence and arguments of the prosecuting attorney and the defendant." Subsection 16-11-103(2)(a)(II) (1990 Supp.) provides that the jury must consider statutory mitigating factors and "any other ... mitigating circumstances supported by the evidence" in its determination of whether mitigating factors outweigh aggravating factors. Moreover, we held in *Tenneson* that the jury must find beyond a reasonable doubt that mitigating factors do not outweigh aggravating factors. Thus, the death-penalty statute, both before and after the 1988 amendment, ensures that the jury will give due consideration to the defendant's character and crime.[8]

I cannot accept the plurality's implicit assertion that the legislature is not permitted to require the imposition of death upon the jury's finding that mitigating factors do not outweigh aggravating factors. The plurality hypothesizes that under the amended death-penalty statute a jury can be convinced that aggravating and mitigating factors are equally balanced; the plurality then reasons that the fourth step resolves the equipoise problem it hypothesizes. Assuming that a jury is convinced that aggravating and mitigating factors are equally balanced and assuming that notwithstanding this equipoise the jury can, as *Tenneson* permits, reach a conclusion beyond a reasonable doubt that death is the appropriate penalty, I see no difference between this procedure and the procedure provided for in the amended death-penalty statute in which the legislature requires the imposition of death when mitigating factors do not outweigh aggravating factors.

I would make the rule to show cause absolute.

ERICKSON and VOLLACK, JJ., join in this dissent only.

Justice ERICKSON respectfully dissenting:

I agree with most of Chief Justice Rovira's dissent relating to the validity of the death penalty statute. I write separately to set forth the reasons I believe the Colorado Constitution does not afford broader rights than the United States Constitution,

---

7. It is worth noting that the United States Supreme Court has never held that such a fourth step is required to ensure the jury's consideration of the defendant's mitigating evidence. *See, e.g., Blystone,* 110 S.Ct. 1078; *Walton,* 110 S.Ct. 3047 (plurality opinion).

8. If, as the plurality contends, the fourth step's indispensable feature is its ability to provide "essential assurance" that the jurors conduct a moral evaluation of the defendant's character and crime, then this court is obligated to save the statute with a limiting construction that would bring it within the constitution's mandates. *See, e.g., Parrish v. Lamm,* 758 P.2d 1356, 1369 (Colo.1988). The limiting construction would provide that the jurors must, in the third step, give all constitutionally necessary consideration to the defendant's character and crime, and to whatever relevant mitigating evidence the defendant presented.

and to state why this appeal should be treated as an interlocutory appeal rather than as an original proceeding under C.A.R. 21.

The plurality holds that Colorado's death penalty scheme, as amended in 1988, is unconstitutional since it does not ensure that a sentence of death is both certain and reliable, in violation of article II, section 20, and article II, section 25, of the Colorado Constitution. In addition, the plurality treats this appeal as an original proceeding under C.A.R. 21. Because I disagree with characterizing this case as an original proceeding, and with the plurality's conclusion that the death penalty statute is unconstitutional, I respectfully dissent.

## I

Although the prosecution filed this case as an appeal of the district court's ruling that the death penalty statute was unconstitutional, the plurality today discharges a "rule" to show cause that has never been issued. The plurality's analysis in treating this as an original proceeding hinges on the importance of the case and our discretion, under C.A.R. 2, to suspend the normal rules of appellate jurisdiction. While I agree with the plurality that it is within our jurisdiction to suspend appellate rules and to treat this as an original proceeding, I do not share the view that it is wise to take such an extraordinary action when it is possible to review the district court's decision under normal appellate procedures.

Section 16–12–102(1), 8A C.R.S. (1986), imposes a duty on the prosecution to appeal a trial court decision adjudging any act of the General Assembly "inoperative or unconstitutional in any criminal case," unless the same issue of constitutionality is pending before another reviewing court. Pursuant to C.A.R. 1, only "final judgments" of a district court may be appealed. *People v. Jefferson*, 748 P.2d 1223, 1224 (Colo. 1988). In *Jefferson*, we held that a district court's order dismissing two counts of extreme indifference murder against the defendant, after ruling that the extreme indifference murder statute was unconstitu-

tional, was a final judgment for purposes of review. *Id.*

[I]t is appropriate to analogize the dismissal of a charge to a final judgment. A dismissal of a charge is not interlocutory, in a sense that it represents one or more steps toward the resolution of a given charge against a particular defendant. Nor is it like a motion for new trial in the case of juror misconduct prior to conviction, where the court can order the defendant tried again on the same charge. *Instead, the dismissal of a charge against the defendant, absent a right of immediate appeal, disposes of the opportunity to try that defendant on that particular charge at the same time other charges are pending before the trial court.*

*Id.* at 1225 (emphasis added) (citations omitted).

We recently distinguished *Jefferson* in *People v. Romero*, 801 P.2d 1192 (Colo. 1990). In *Romero*, the prosecution claimed that the defendant's Crim.P. 35(c) motion was precluded by section 16–5–402(3), 8A C.R.S. (1986), which limits collateral attacks on criminal convictions. *Id.* at 1193. We dismissed the prosecution's appeal, brought under section 16–12–102(1), because the district court's ruling that section 16–5–402(3) was unconstitutional was not a final judgment. *Id.* at 1194. We said that while the court's decision to dismiss criminal counts in *Jefferson* precluded the state from prosecuting the defendant on those counts, thereby amounting to a final judgment, if the trial court granted Romero's rule 35(c) motion, "the People may appeal and challenge the merits of the court's decision as well as the court's prehearing ruling on the statute's unconstitutionality." *Id.*

Unlike the circumstances in *Romero*, if the prosecution were not allowed to appeal the district court's decision that the death penalty statute was unconstitutional, although it could continue to prosecute first-degree murder charges, it would be precluded from bringing this case as a capital case, regardless of a later appellate decision. Plur. op. at 839; *People v. Drake,*

748 P.2d 1237 (Colo.1988). That circumstance, it seems to me, is no less daunting than a trial court's decision to dismiss charges, as in *Jefferson*.

On the other hand, we have consistently maintained that our exercise of original jurisdiction under C.A.R. 21 is limited to reviewing whether a trial court exceeded its jurisdiction or seriously abused its discretion, coupled with no adequate remedy on appeal. *Bye v. District Court*, 701 P.2d 56 (Colo.1985); *Toll v. City & County of Denver*, 139 Colo. 462, 340 P.2d 862 (1959); *see also* Colo. Const. art. VI, § 3. There is no dispute that the district court judge had both the jurisdiction and the discretion to find that the death penalty statute was unconstitutional, regardless of whether that finding is erroneous. The fact that this is an important case of first impression should not be dispositive.

Therefore, I would not treat this as an original proceeding, but rather as an appeal under section 16–12–102(1), based on our holding in *Jefferson*.

## II

The plurality's holding is premised on the notion that the Due Process and Cruel and Unusual Punishment Clauses of the Colorado Constitution afford more protection to defendants charged with capital crimes than do their federal equivalents in the eighth and fourteenth amendments. Plur. op. at 17–19.

Except between 1897 and 1901, and the period in the 1970s when the death penalty was found unconstitutional in *People v. District Court*, 196 Colo. 401, 586 P.2d 31 (1978), Colorado has had a death penalty since 1861. *People v. Davis*, 794 P.2d 159, 171 n. 3 (Colo.1990). In all of that time, we have never said that the Colorado Constitution affords greater protection than the federal Constitution from violations of due process rights or from cruel and unusual punishment when reviewing a sentence of death. In *People v. District Court*, we struck down Colorado's death penalty scheme as it then existed solely on the grounds that it violated the federal Constitution as interpreted by the United States

Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and its progeny, particularly *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). 196 Colo. at 405, 586 P.2d at 33. We specifically declined to express a view about the limits placed on punishment under the Colorado Constitution. *Id.* at n. 2.

*People v. Durre*, 690 P.2d 165 (Colo. 1984), was the first case in which we reviewed a sentence of death brought under section 16–11–103, 8 C.R.S. (1983 Supp.), as amended by the General Assembly in response to *People v. District Court*. The death penalty scheme in *Durre* mandated a sentence of death if the jury did not find the existence of any statutory mitigating factors or additional mitigating factors sufficient to justify a life sentence, and did find, beyond a reasonable doubt, the existence of at least one statutory aggravating factor. Section 16–11–103(4). Although we did not state whether we were analyzing *Durre*'s sentence of death under the state or federal constitution, we held that the requirement of certainty and reliability mandated that, under the sentencing scheme, the jury be instructed on the effects of its verdicts regarding mitigating, additional mitigating, and aggravating factors. 690 P.2d at 174. In *Durre*, we again relied almost exclusively on federal cases construing the United States Constitution, and nowhere intimated that Colorado's constitution would provide additional protections. Then, in *People v. Drake*, 748 P.2d at 1237, when reversing a death sentence because the jury had not been properly instructed, we once again relied on federal cases and *Durre*. Justice Rovira, Justice Vollack, and I all wrote separately to express our view that the death penalty scheme was constitutional, and Justices Rovira and Vollack specifically rejected the defendant's contention that it was unconstitutional under our state constitution notwithstanding United States Supreme Court opinions to the contrary. *Id.* at 1260 (Erickson, J., specially concurring); *id.* (Rovira, J., concurring in part and dissenting in part); *id.* at 1270 (Vollack J., concurring in

part and dissenting in part). Justice Vollack expressed the view that, while states are free to consider constitutional challenges based on their own state statutes, independent of United States Supreme Court opinions, this court had "expanded constitutional protections primarily regarding search and seizure issues. These cases do not seem to suggest that the constitution of this state would be construed in a different fashion as regards capital sentencing." *Id.* at 1275 n. 3.

In *People v. Davis,* we once again faced a challenge to the death penalty based on provisions of the state constitution, and, once again, we rejected a distinction between the standards applied to the federal Constitution and the state constitution. 794 P.2d at 170–71. In *Davis,* we reviewed *People v. Tenneson,* 788 P.2d 786 (Colo. 1990), and said that

> although not directly addressing the question of capital punishment under the state constitution, this court reviewed the present statute under the standards developed by the United States Supreme Court in *Gregg [v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976),] and more recent cases. Using the federal capital punishment jurisprudence as our guide, we interpreted several aspects of our death sentencing scheme. *See Tenneson,* 788 P.2d at 794.

*Id.* at 170. We then said:

> Implicit in the *Tenneson* decision is the assumption that there exists no independent basis under the state constitutional provision forbidding cruel and unusual punishment on which to base a *per se* challenge to capital punishment.
>
> Further, in other contexts we have not adopted an analysis of our constitutional provision forbidding cruel and unusual punishment which differs from that followed by the United States Supreme Court with respect to the Eighth Amendment.

*Id.; see People v. Gutierrez,* 622 P.2d 547, 556 (Colo.1981) (rejecting argument that article II, section 20, provided greater protection than the federal eighth amendment). Nor have we applied anything but federal standards in our subsequent death penalty cases. *People v. O'Neill,* 803 P.2d 164 (Colo.1990) (reversing sentence of death); *People v. Rodriguez,* 794 P.2d 965, 986 (Colo.1990) (upholding sentence of death: "In the context of capital punishment, we have not interpreted the state Constitution to provide broader protection than the federal Constitution.").

The plurality does not explain why, after nearly a century of jurisprudence, our state constitution provides more protection in capital cases than does the eighth or fourteenth amendments. In *People ex rel. Juhan v. District Court,* 165 Colo. 253, 439 P.2d 741 (1968), we held that the state Due Process Clause required the prosecution to prove the mental capacity to commit a crime beyond a reasonable doubt, even though the United States Supreme Court had previously upheld an apposite statute, because the "long line of [Colorado] decisions established a 'principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental' " that the state bore the burden of proving a defendant was not insane at the time the offense was committed. *Id.* at 262, 439 P.2d at 746. In addition, in *People v. Hoinville,* 191 Colo. 357, 360, 553 P.2d 777, 780 (1976), we said that states were free to impose greater restrictions on police than the federal Constitution required "if its citizens either by their constitution or their legislature so determine." Since then, our expansion of constitutional rights under Colorado's constitution has been limited almost exclusively to the search and seizure arena. There is no indication, either from the plurality today, or from any other source, that the framers of the Colorado Constitution intended any thing other than to offer the same protections for a defendant sentenced to death that are offered by the United States Constitution. In fact, Justice Rovira pointed out in *Drake,* when rejecting the defendant's argument that the "standard of decency" in Colorado found the death penalty cruel and unusual punishment, that "[t]he citizens of Colorado, directly and through their elected representatives, have repeatedly declared their support [for] the death penalty." 748 P.2d

at 1262–63. Such support hardly weighs in favor of the notion that Colorado's constitution offers more protection than its federal counterpart is a "principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental," or, as the plurality maintains, is brought about by "the concerns of our own citizens and tailored to our unique regional location." Plur. op. at 843.

Finally, the plurality belies its own argument when it argues for independent state constitutional review, but then proceeds to analyze the death penalty scheme under its interpretation of federal cases. It may be that the United States Supreme Court would, after applying the eighth and fourteenth amendments, find our death penalty scheme constitutional, although such a holding is hardly assured given that the Court has not specifically addressed an equipoise situation such as ours. Even so, simply because we as judges may or may not agree with that outcome does not give us the power to turn our back on the intentions of the framers of the state constitution and render a different decision more to our liking. Nor does precluding the United States Supreme Court from reviewing our decision justify an independent state grounds. The Cruel and Unusual Punishment and Due Process Clauses of Colorado's constitution are worded identically to those found in the eighth and fourteenth amendments to the United States Constitution. Without any evidence that the drafters of the Colorado Constitution meant for us to analyze those clauses differently, I would follow the United States Supreme Court's precedent to determine whether Colorado's death penalty scheme is unconstitutional under the state constitution.[1]

### III

In *People v. Tenneson*, we reviewed the pre–1988 death penalty statute and concluded that the "beyond a reasonable doubt" standard was applicable to the jury's finding that no mitigating circumstances outweighed the proven aggravating factors in step three, and that death was the appropriate penalty in step four. 788 P.2d at 795–96. We based those conclusions on the "heightened need for sentencing reliability in capital cases." *Id.* at 791 (citing *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983); *Lockett v. Ohio*, 438 U.S. at 604, 98 S.Ct. at 2964; *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)).

Our holding, that the jury be instructed that its finding of no mitigating circumstances outweighed the proven aggravating factors must be beyond a reasonable doubt, was premised on the conclusion that such a requirement *satisfied* the required reliability in death sentence cases. We said that "[a]n instruction to the jury that [it] must be convinced beyond a reasonable doubt that any mitigating factors do not outweigh the proven statutory factors before a sentence of death can be imposed *adequately and appropriately communicates the degree of reliability that must inhere in the balancing process.*" 788 P.2d at 792 (emphasis added). We then said that "the term 'beyond a reasonable doubt' serves well to communicate to the jurors *the degree of certainty that they must possess* that any mitigating factors do not outweigh the proven statutory aggravating factors before arriving at the ultimate judgment that death is the appropriate penalty," and that "the beyond a reasonable doubt standard as applied to the weighing of aggravating and mitigating factors serves to *assure the degree of reliability necessary to support a verdict of death in a sentencing proceeding.*" *Id.* at 794 (emphasis added). Our express holding

---

1. I agree with the majority that, because the district court found the death penalty scheme unconstitutional solely on state grounds, it is inappropriate for us to review this case under the eighth and fourteenth amendments. As I have said, however, a conclusion that the death penalty scheme passes federal constitutional muster would, in my view, lead to the same conclusion under the Colorado Constitution.

in *Tenneson* that the heightened need for reliability in death penalty cases is satisfied by a "beyond a reasonable doubt" instruction in the weighing phase of jury deliberations is in no way predicated on the separate existence of the pre–1988 fourth step. *See Davis*, 794 P.2d at 192 ("In making the profoundly moral decision of whether to impose a sentence of death, [the jury] must consider all the facts and circumstances of the crime, the defendant's background and character and any mitigating factors raised by the defendant.")

The plurality maintains there is no legislative history shedding light on the purpose of eliminating the fourth step. Plur. op. at 842. The intent, in my view, is plainly indicated by virtue of the elimination itself. The General Assembly concluded that all defendants convicted of capital crimes should be sentenced to death once the jury determines that the prosecution has proven, beyond a reasonable doubt, at least one statutory aggravating factor, and that there are no mitigating factors that outweigh the aggravating factor or factors. The legislature, then, decided to remove the discretion from the jury to decide that a life sentence is more appropriate even though mitigating factors do not outweigh aggravating factors. Unless that discretion, i.e., the fourth step, is constitutionally required, it is within the province of the legislature to make such a determination, as long as "the discretion of the sentencer [is] suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action" and the sentencing body is allowed to consider any relevant mitigating evidence regarding the defendant's character and background and the circumstances of the offense. *Tenneson*, 788 P.2d at 790 (citations omitted).

### A

The death penalty scheme as amended is now more akin to the former Colorado death penalty scheme that we examined in *Durre*, which mandated a sentence of death if there was at least one statutory aggravating factor, and the jury did not find either statutory mitigating factors or additional mitigating factors "sufficient to justify a sentence of life imprisonment." *Durre*, 690 P.2d at 171. As in this case, the death penalty statute, as it existed at the time *Durre* was announced, did not have a final step that gave the jury ultimate discretion to impose life notwithstanding its findings regarding aggravating and mitigating factors. The difference between the statute then and the death penalty scheme we review today is the highly unlikely possibility of equipoise—a finding by the jury that the mitigating factors equal exactly whatever aggravating factors have been proven. Assuming for the moment that true equipoise is anything more than a theoretical possibility, the question becomes whether Colorado's constitution requires a further discretionary step by the jury to determine whether death is the appropriate penalty.

### B

In *Furman v. Georgia*, 408 U.S. at 240, 92 S.Ct. at 2727, the Supreme Court held that imposition of the death penalty in the two cases before it constituted cruel and unusual punishment in violation of the eighth and fourteenth amendments. While *Furman* produced one *per curiam* opinion and nine other separate opinions, it is generally agreed that at a minimum the case stands for the proposition that "the penalty of death may not be imposed under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner." *Godfrey v. Georgia*, 446 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980). The result of *Furman* was a wide variety of death penalty schemes drafted to satisfy the constitutional requisites of the eighth and fourteenth amendments. That, in turn, led the Court to announce five cases in July 1976, setting forth the minimum procedural requirements of the Constitution in death penalty cases. *Gregg v. Georgia*, 428 U.S. at 153, 96 S.Ct. at 2915; *Proffitt v. Florida*, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d

929 (1976); *Woodson v. North Carolina,* 428 U.S. at 280, 96 S.Ct. at 2979; *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).

In *Gregg v. Georgia,* 428 U.S. at 176–78, 96 S.Ct. at 2926–27, the Court held that imposition of the death penalty was not *per se* cruel and unusual punishment. A plurality concluded that *"Furman* mandates that *where* discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk or wholly arbitrary and capricious action." *Id.* at 189, 96 S.Ct. at 2932 (emphasis added). "The concerns expressed in *Furman* ... can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance." *Id.* at 195, 96 S.Ct. at 2935. The death penalty scheme upheld in *Gregg* allowed the jury to recommend death in murder cases if it found at least one statutory aggravating factor, and the jury was authorized to consider any other appropriate aggravating or mitigating circumstances. *Id.* at 196–97, 96 S.Ct. at 2936. The statute also provided for automatic appellate review. *Id.*

In *Proffitt v. Florida,* the Court upheld Florida's death penalty statute, which, according to the three-justice concurrence, mandated death if the statutory aggravating factors outweighed the mitigating factors. 428 U.S. at 260–61, 96 S.Ct. at 2970.

> Under Florida law, the sentencing judge is *required* to impose the death penalty on all first-degree murderers as to whom the statutory aggravating factors outweigh the mitigating factors. There is good reason to anticipate, then, that as to certain categories of murderers, the penalty will not be imposed freakishly or rarely but will be imposed with regularity....

*Id.* (White, J., concurring). *Proffitt* also held that the defendant did not have a constitutional right to be sentenced by a jury. *Id.* at 252, 96 S.Ct. at 2966. In *Jurek v. Texas,* the Court upheld a death penalty scheme that, while structured differently from the ones in *Gregg* and *Proffitt,* still in essence required the jury to focus on the particularized nature of the crime, and thus guided and focused the jury's objective consideration. 428 U.S. at 268–76, 96 S.Ct. at 2954–58. Once again, the Texas sentencing scheme mandated death if the jury found that the defendant had committed deliberate murder, there was a probability the defendant would constitute a continuing threat to society, and, if raised by the evidence, the defendant had acted unreasonably in response to provocation. *Id.* at 277–78, 96 S.Ct. at 2958–59 (White, J., concurring).

Thus, both the Texas and Florida statutes upheld by the Court divested discretion from the sentencing authority once certain prerequisites were established. On the other hand, the statutes struck down in *Woodson* and *Roberts* both lacked standards to guide the jury in individualizing the case before them.

The plurality's holding assumes that the *jury* must determine whether death is the appropriate penalty if the aggravating and mitigating factors are in balance. Plur. op. at 844–845. The Supreme Court has not indicated that there is any constitutional prohibition against a legislature mandating death sentences once a sentencing authority, be it judge or jury, weighs the individual circumstances of the crime and the defendant. Once that weighing process is performed, the eighth and fourteenth amendments' certainty and reliability requirements are met. If the jury is suitably directed and limited in that balancing process, which it is under step three of section 16–11–103(2), nothing more is required.

In *Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990), the Court upheld a statute mandating the death penalty if the jury found at least one aggravating circumstance and no mitigating circumstance. A majority of the Court rejected the defendant's argument that the mandatory nature of the death penalty scheme rendered that scheme unconstitutional since it restricted the individualized sentencing required by the eighth amendment in death penalty cases. *Id.* 110 S.Ct.

at 1083. "The presence of aggravating circumstances serves the purpose of limiting the class of death-eligible defendants, and the Eighth Amendment does not require that these aggravating circumstances be further refined or weighted by a jury." *Id.; see Lowenfield v. Phelps,* 484 U.S. at 244, 108 S.Ct. at 554. The Court's decision was not premised on the aggravating factors outweighing the mitigating factors, if any, but rather on the mere presence of the aggravating factors as a limitation on the jury. "The requirement of individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence." *Id.* (footnote omitted). The Court reaffirmed that holding in *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), in which it upheld a California statute mandating the death penalty if the aggravating circumstances outweighed the mitigating circumstances. Once again, the Court rejected the petitioner's argument that the jury must be free to impose a sentence of life even if the aggravating factors outweighed the mitigating factors. *Id.* 110 S.Ct. at 1196.

Finally, in *Walton v. Arizona,* —— U.S. ——, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), the Court upheld an Arizona statute mandating a death sentence if the trial court found one or more aggravating factors and "no mitigating circumstances sufficiently substantial to call for leniency," even though, as pointed out by the dissent, there existed the possibility of equipoise. *Id.* 110 S.Ct. at 3056, 3075 (Blackmun, J., dissenting). The *Walton* plurality expressly noted that " 'there is no ... constitutional requirement of unfettered sentencing discretion in the jury, and States are free to structure and shape consideration of mitigating evidence "in an effort to achieve a more rational and equitable administration of the death penalty." ' " *Id.* at 3056 (quoting *Boyde,* 110 S.Ct. at 1196 and *Franklin v. Lynaugh,* 487 U.S. 164, 181, 108 S.Ct. 2320, 2331, 101 L.Ed.2d 155 (1988) (plurality opinion).[2]

The foregoing cases taken together amount to the inescapable conclusion that heightened need for certainty and reliability mandated by the eighth and fourteenth amendments in death penalty cases is satisfied by a statutory scheme such as Colorado's that directs and limits the jury's discretion by setting forth specific aggravating factors that must be proved beyond a reasonable doubt, and allowing the jury to consider any relevant mitigating factors, even if the statute then mandates the death penalty in the event there are no mitigating factors that outweigh the aggravating factors. *See, e.g., McCleskey v. Kemp,* 481 U.S. 279, 305–06, 107 S.Ct. 1756, 1774–75, 95 L.Ed.2d 262 (1987). In my view, Colorado's constitution demands no more. Because the weighing process incorporated in section 16–11–103 satisfies the need for certainty and reliability of a sentence of death, as required under Colorado Constitution article II, section 20, and article II, section 25, I would reverse the district court and hold the death penalty scheme constitutional.

For the foregoing reasons, I respectfully dissent.

VOLLACK, J., joins in this dissent.

---

**2.** In *Walton,* four justices held that the mandatory nature of the Arizona death penalty statute was consistent with *Furman* and *Lockett,* whereas Justice Scalia concurred with the judgment but wrote separately to state that he would no longer feel bound by *Lockett* since, in his view, it was irreconcilable with *Furman.* 110 S.Ct. at 3058.