The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Danny Nieto MARTINEZ, Jr.,
Defendant–Appellee.

No. 99SA206.

Supreme Court of Colorado,
En Banc.

Jan. 22, 2001.

*See also*, 24 P.3d 629.

David J. Thomas, District Attorney, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Mary Malatesta, Assistant Attorney General and Special Prosecutor, Golden, CO, Attorneys for Plaintiff–Appellant.

Susan L. Foreman, Boulder, CO, Haddon, Morgan & Foreman, P.C., Ty Gee, Denver, CO, Attorneys for Defendant–Appellee.

Justice KOURLIS delivered the Opinion of the Court.

This case comes before the court on the People's appeal of a dissenting judge's opinion in a death penalty case. A jury convicted Defendant Danny Martinez as a complicitor to a number of offenses [1] arising out of the assault, rape, kidnapping, and murder of fourteen-year-old Brandaline Duvall. The court of appeals affirmed the convictions in *People v. Martinez*, 24 P.3d 629 (Colo.App. 2000), *cert. denied* (Colo.2001).

The People sought the death penalty in this case. At the outset, Defendant made a motion to strike the death penalty arguing that a person convicted as complicitor to first degree murder could never receive a death sentence. The trial judge denied this motion. He noted that Colorado's death penalty statute specifically allows the sentencing panel to consider a defendant's "minor participation" in a murder as a mitigating factor. § 16–11–103(4)(d), 6 C.R.S. (2000). Accordingly, he found that "[t]his provision is an implicit recognition of the fact that a complicitor may participate in a minimal matter in the acts resulting in death but still face the death penalty." The trial judge also determined that nothing in the Eighth Amendment to the United States Constitution specifically prohibited the imposition of the death penalty on a complicitor to murder. Because of that ruling, the case was tried as a death penalty case. Following the jury's return of a guilty verdict, a three-judge panel conducted the sentencing phase of the case pursuant to section 16–11–103.

At the conclusion of that sentencing phase, the panel issued an order sentencing Defendant to life without possibility of parole under section 16–11–103(2)(d). Two of the judges, including the presiding judge, found the death penalty appropriate and one judge disagreed. Because the panel was not unanimous, under the statute, Defendant received a life sentence. The dissenting judge declined to impose the death penalty essentially for two reasons, which he set out in a written opinion as provided by statute. First, he viewed the Eighth Amendment to the United States Constitution as prohibiting the imposition of the death penalty on a person convicted not as a principal, but rather as a complicitor. Second, even if the law were to permit imposition of the death penalty, he concluded that the death penalty was improper when applied to Martinez because he was not the individual who intentionally caused the death of Brandy Duvall.

The People challenge that dissenting opinion by appeal to this court. The People claim that the Eighth Amendment to the United States Constitution does not prohibit the imposition of the death penalty on a person found guilty of intentional murder in the first degree on a complicity theory, and that therefore the dissenting judge erred in his application of aggravating factors set forth in section 16–11–103(5). The People bring the appeal under 16–12–102(1), 6 C.R.S. (2000), which allows certain appeals to this court by the prosecution on issues of law.

This is the first case in which we have before us an appeal in a case involving a three-judge sentencing panel in a death pen-

---

1. Defendant's convictions included First Degree Murder After Deliberation, First Degree Felony Murder, Second Degree Kidnapping, First Degree Sexual Assault, Second Degree Sexual Assault, Sexual Assault on a Child by Use of Force, and First Degree Assault. Defendant was also charged with "crimes of violence" that enhanced his sentence for Second Degree Kidnapping and First Degree Sexual Assault.

alty case. The role of the panel in the criminal process is something to which this court has not spoken, and we have only the statute to which to look for guidance. The specific questions posed by this appeal implicate broad questions involving the role of the sentencing panel judges in the sentencing process: specifically, are the panel judges acting as jurors who find facts and reach a verdict, or are they acting as judicial officers who reach independent decisions on matters of law and fact.

■ Because of the importance of those issues to the way in which the process unfolds, both procedurally and substantively, we do not approach them lightly. Rather, we will resolve them on a case-by-case basis, as dictated by our jurisprudence and limited function.

In this case, the dissenting sentencing judge announced two alternate bases for his decision not to impose the death penalty: one that was factual and one that was legal. Because of the factual basis, we do not view this appeal as turning on a question of law as is required for appeals filed under section 16–12–102(1). Even if the judge had reached a different conclusion of law, he would still have made the same decision regarding the death penalty. We therefore conclude that we do not have proper jurisdiction to hear the appeal under section 16–12–102(1).

We also decline to treat the case as an original proceeding under C.A.R. 21, because there is no trial court ruling that somehow interfered with the parties' rights to litigate the case. Indeed, the ruling that set the course of the case was the trial judge's ruling that the death penalty *was* available in a complicity case. Further, there is no remedy that could result from the People's appeal. Martinez received a life sentence, which could never be converted to a death penalty, whether the dissenting judge was correct as a matter of law or not.

■ The broader questions of when we have jurisdiction to review sentencing judges' rulings remain unanswered. What we do announce by this opinion is that we will not review the resolution of questions of fact by members of a sentencing panel. We dismiss this appeal.

I.

■ The People rely on section 16–12–102(1), for the proposition that this court does have jurisdiction to consider a direct appeal in this case.[2] The pertinent portion of section 16–12–102(1) states:

However, *if a statute providing for the imposition of the death penalty is adjudged inoperative or inapplicable for any reason, such adjudication shall constitute a final order that shall be immediately appealable* to the supreme court of Colorado, notwithstanding any statute or court rule to the contrary.

(Emphasis added.)

The General Assembly enacted this portion of section 16–12–102(1) in response to this court's decision in *People v. Young,* 814 P.2d 834 (Colo.1991). In *Young,* the People appealed the trial court's order finding the death penalty statute unconstitutional. *Id.* at 836. We held that section 16–12–102(1)[3] did not provide jurisdiction, because the trial court's order did not constitute a final judgment. *Id.* at 838. We similarly refused to apply section 16–12–102(2) as a proper basis

2. On October 20, 1999, this court denied Defendant's motion to dismiss for lack of jurisdiction. Nonetheless, jurisdiction is an issue that can be raised sua sponte or by either party to the case at any stage of the proceeding. *Triebelhorn v. Turzanski,* 149 Colo. 558, 561, 370 P.2d 757, 759 (1962).

3. At the time we decided *Young,* section 16–12–102(1) read:

The prosecution may appeal any decision of the trial court in a criminal case upon any question of law. If any act of the general assembly is adjudged inoperative or unconsti-

tutional in any criminal case, it is the duty of the district attorney of the judicial district in which the court making such decision is situated to appeal on behalf of the people of the state of Colorado, unless the same issue of constitutionality is already pending before a reviewing court in another case. Nothing in this section shall authorize placing the defendant in jeopardy a second time for the same offense.... The procedure to be followed in filing and prosecuting appeals under this section shall be as provided by applicable rule of the supreme court of Colorado.

for jurisdiction because that section applied only to interlocutory appeals by the government concerning pretrial suppression orders. Instead, we exercised original jurisdiction under C.A.R. 21 and found the Colorado death penalty statute, section 16–11–103, as amended in 1988, invalid on its face as it failed to assure a constitutionally certain and reliable verdict of death under the Colorado Constitution. *Id.* at 847.

In response to *Young,* with the express intent that "there be no hiatus in the imposition of the death penalty" the Colorado General Assembly amended the statutory scheme imposing the death penalty.[4] The General Assembly amended section 16–12–102(1) to ensure that a lower court order finding a death penalty statute inoperative or inapplicable constitutes a "final order which shall be immediately appealable to the Supreme Court of Colorado." Ch. 5, sec. 1, § 16–12–102(1), 1991 Colo. Sess. Laws 15, 15 (2d Extraordinary Sess.).

Here, the People argue that the dissenting judge's decision refusing to impose a sentence of death on Defendant constituted a legal conclusion that made the death penalty statute inoperative and inapplicable to a large class of persons. We reject this argument for a number of reasons.

### A.

First, as a general matter, appeals taken by the prosecution "are strictly limited by law." *People v. Tharp,* 746 P.2d 1337, 1339 (Colo.1987). In *Tharp,* we dismissed an appeal for three fundamental flaws. First, the appeal in *Tharp* failed because it involved an evidentiary issue that implicated factual as well as legal issues. *Id.* at 1339. Any prosecutorial appeal under section 16–12–102(1) is necessarily limited to questions of law only. *People v. Fagerholm,* 768 P.2d 689, 693 (Colo.1989); *Tharp,* 746 P.2d at

1339. This section does not give the People a basis upon which to challenge the trial court's assessment of the evidence. *Fagerholm,* 768 P.2d at 693. Second, the appeal of an evidentiary issue in *Tharp* provided little precedential value for later analysis of broader legal issues. *Tharp,* 746 P.2d at 1339. Finally, we noted in *Tharp* that the very nature of an appeal corrects errors at the trial court that injuriously affect the rights of a party to the litigation. *Id.* Like in *Tharp,* the People's appeal in this case implicates factual, not purely legal, questions. The resolution of those questions falls within the discretion of the sentencing judge.

The three-judge sentencing panel is a creature of statute that replaces the sentencing jury in a capital case. Specifically, effective July 1, 1995, the Colorado legislature amended the statute governing the imposition of the death penalty for those convicted of class one felonies. § 16–11–103(1)(a). The new law provided for judicial sentencing by a three-judge panel in capital cases instead of sentencing by a jury. *Id.; see A Bill for an Act Concerning Imposition of the Death Penalty,* Hearings on S.B. 54, (Colo. Mar. 2, 1995) (statement of Bob Grant, District Attorney for Adams County and Chairman of District Attorney's Council Capital Litigation Subcommittee); *see also Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (holding the United States Constitution mandates consistency in the imposition of the death penalty).

The panel of judges conducting the sentencing hearing consists of the judge who presided at the trial and two additional judges designated by the Chief Justice of the Colorado Supreme Court. § 16–11–103(1)(a.5)(I). The trial judge who presided at the trial also acts as presiding judge for the purposes of the sentencing hearing. § 16–11–103(1)(a.5)(III).[5]

---

4. The legislature additionally enacted two new statutes in response to *Young.* Section 16–11–801 provided that to the extent the pre 1988 statute was not automatically revitalized by operation of law, section 16–11–802 was applicable to offenses committed on or after July 1, 1988, and before September 20, 1991. Section 16–11–802 provided for a four-step deliberation process for imposition of a death sentence, and is almost

identical to the pre 1988 statute. *People v. Aguayo,* 840 P.2d 336, 338 (Colo.1992).

5. The statutory scheme also provides for appointments of additional replacement judges to the sentencing panel under circumstances in which a judge dies, resigns, is disqualified, or is otherwise incapacitated. § 16–11–103(1)(a.5)(I).

To make sentencing decisions, each sentencing judge must consider the certified trial transcripts and the evidence presented by the parties at the sentencing hearing. § 16–11–103(1)(a.7). A capital sentencer must be convinced beyond a reasonable doubt that any mitigating factors do not outweigh proven statutory aggravating factors. *People v. Tenneson,* 788 P.2d 786, 790–96 (Colo.1990). In its examination of the appropriateness of a sentence of death, the three-judge panel follows the same four-fold inquiry that the pre-amendment statutory scheme assigned to the jury.[6]

First, the panel must determine if at least one of the statutory aggravating factors exists. § 16–11–103(2)(a)(I). If the panel does not unanimously agree that the prosecution has proved the existence of at least one statutory aggravator beyond a reasonable doubt, the panel must sentence the defendant to life imprisonment. § 16–11–103(2)(b)(I). This serves to narrow the group of individuals convicted of first degree murder who are eligible for the imposition of the death penalty. *People v. Dunlap,* 975 P.2d 723, 736 (Colo.1999). Second, if the panel finds that the People prove at least one statutory aggravating factor, they must then consider whether any mitigating factors exist. § 16–11–103(2)(a)(II); *Dunlap,* 975 P.2d at 736. "There shall be no burden of proof as to proving or disproving mitigating factors," § 16–11–103(1)(d), and the panel need not unanimously agree upon the existence of mitigating factors. *See McKoy v. North Carolina,* 494 U.S. 433, 435, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (holding that sentencer is permitted to consider all mitigating evidence); *Mills v. Maryland,* 486 U.S. 367, 384, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) (same). Third, the panel must determine beyond a reasonable doubt whether "sufficient mitigating factors exist which outweigh any aggravating factor or factors found to exist." § 16–11–103(2)(a)(II); *Dunlap,* 975 P.2d at 736. Fourth, and finally, if the panel finds that any mitigating factors do not outweigh the proven statutory aggravating fac-

tors, it must decide whether the defendant should be sentenced to death or to life imprisonment. § 16–11–103(2)(a)(III); *Dunlap,* 975 P.2d at 736; *see also Tenneson,* 788 P.2d at 789 (articulating that the jury must address these four factors to properly exercise its function in a capital sentencing proceeding).

The judges may consider all admissible evidence presented by either party that the panel "deems relevant to the nature of the crime, and the character, background, and history of the defendant, including any evidence presented in the guilt phase of the trial." § 16–11–103(1)(b). The panel members' decisions rest upon each panelist's independent assessment of the relevant admissible evidence. Unlike the verdict of a traditional jury, the sentence of the three-judge panel, "whether to death or to life in prison, shall be supported by specific written findings of fact based upon the circumstances as set forth in subsections (4) and (5) of this section [addressing mitigating and aggravating factors] and upon the records of the trial and the sentencing hearing." § 16–11–103(2)(c).

Here, although the dissenting judge did conclude that the Eighth Amendment to the United States Constitution precluded imposition of the death penalty upon a complicitor, he further stated:

Even if it was permissive under the United States Constitution, my decision would be the death penalty is improper when the Defendant was convicted on a complicity theory. The ultimate penalty, and extreme penalty of death, should not be imposed when Defendant Danny Martinez was not the individual who intentionally caused the death of Brandy Duvall.

Hence, the judge examined the evidence presented and made the determination he was required to make in the final step of the four-fold inquiry: he decided what he believed to be the appropriate sentence given the factual circumstances. This judge's resolution of the issues presented by the four-fold inquiry

---

6. Until June 5, 1995 when the General Assembly amended section 16–11–103, the jury that determined the guilt of a criminal defendant also performed the sentencing function in capital cases.

turned on decisions of fact that are not reviewable by this court under section 16–12–102(1) as a determination on a question of law.

## II.

Having concluded that we have no jurisdiction under section 16–12–102(1), we must now address the prospect of converting this inappropriate appeal into an original proceeding under C.A.R. 21. *See Young*, 814 P.2d at 838–39.

This court may use an original proceeding under C.A.R. 21 to "test whether the trial court is proceeding without or in excess of its jurisdiction, or to review a serious abuse of discretion when an appellate remedy would not be adequate." *Id.* at 838. This court exercises its original jurisdiction under C.A.R. 21 when a pretrial interlocutory ruling interferes with a party's ability to litigate the merits of the case, *People v. Dist. Court*, 793 P.2d 163, 166 (Colo.1990), and when an appeal does not provide a plain, speedy, and adequate remedy for the party. *Weaver Constr. Co. v. Dist. Court*, 190 Colo. 227, 230, 545 P.2d 1042, 1044 (1976). This court has discretion to grant relief under C.A.R. 21. *Young*, 814 P.2d at 838. Moreover, we have the authority on our own motion to suspend the rules of appellate procedure in a particular case in the interest of expediting decisions or for other good cause shown. C.A.R. 2.

Previously, this court has exercised its original jurisdiction to review trial court rulings dealing with death penalty issues. *Young*, 814 P.2d at 838 (finding original jurisdiction appropriate as the case was the first request for appellate review of the constitutionality of the 1988 amendments to the death penalty statute); *People v. Dist. Court*, 196 Colo. 401, 403, 586 P.2d 31, 32 (1978) (exercising original jurisdiction to address and ultimately affirm lower court decisions finding the 1973 Colorado death penalty statute unconstitutional).

Original jurisdiction allows this court to intervene in a case in which the trial court abuses its discretion in a way that cannot be later remedied on appeal. *Todd v. Bear*

*Valley Vill. Apartments*, 980 P.2d 973, 975 (Colo.1999). It is extraordinary relief, limited in purpose and availability, and the court retains the discretion to choose not to exercise it. *Halaby, McCrea & Cross v. Hoffman*, 831 P.2d 902, 905 (Colo.1992). It has its origins in the common law writs such as habeas corpus, mandamus, quo warranto, certiorari and injunction. *See* Colo. Const. art. VI, § 3. This court has stated that it will not exercise its original jurisdiction except in cases of great public importance, or in cases where not to do so would amount to a denial of justice. *Higgs v. Dist. Court*, 713 P.2d 840, 849 (Colo.1985) (allowing original jurisdiction to address issues of significant public importance that we have not yet examined); *Groendyke Transp., Inc. v. Dist. Court*, 140 Colo. 190, 195, 343 P.2d 535, 537 (1959) (noting original jurisdiction appropriate to prevent denial or miscarriage of justice).

This is not such a case. There is no ruling of law at issue that could impact other cases or other courts, such as the district court's ruling in *Young* that the death penalty was unconstitutional. There is no abuse of discretion that could impact the rights of the parties and that this court's intervention could correct. In fact, Defendant Martinez is sentenced to life in prison and his life sentence cannot be replaced with a death sentence irrespective of this court's view of the applicable law. This court has no ability to impose any remedy. Lastly, one judge's view of the application of the law to the evidence in this case has no precedential value.

## III.

In conclusion, we hold that we have no jurisdiction to consider the People's appeal in this matter, and accordingly do not reach the substantive issues presented. The appeal is dismissed.